ELLEN P. MARIO ET AL. *v.* TOWN OF FAIRFIELD ET AL.
(13906)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued November 7, 1990—decision released January 22, 1991

*Louis B. Blumenfeld,* with whom were *Jeffrey C. Pingpank* and, on the brief, *Jeffrey Lang,* for the appellants (plaintiffs).

*Donal C. Collimore,* assistant town attorney, for the appellees (defendants).

GLASS, J. This appeal concerns the validity of a regulation adopted by the defendant conservation commission of the town of Fairfield (commission),[1] the town's inland wetlands agency, that requires an owner of a parcel of land partially within a designated wetlands area to apply to the commission before erecting any structure on the nonwetlands portion of the parcel.[2] The trial court determined that the regulation was not promulgated in excess of the commission's statutory authority and did not violate the plaintiffs'[3] equal protection rights. We affirm the judgment of the trial court.

The plaintiffs jointly own a twenty-two acre parcel of land located within the town of Fairfield. Approximately eleven acres of the parcel are designated as wetlands. On June 2, 1987, the commission adopted inland wetlands and watercourses regulation § 3.3 (xi), applicable to construction activity on parcels of land, like the plaintiffs', that are partially contained within designated wetlands areas. The disputed aspect of the regulation is its requirement that before the owner of such a parcel may erect a structure on the nonwetland portion of the parcel, a "certificate of wetlands conformance" must be obtained from the commission.[4] The

[1] The town of Fairfield and the commission were both named as defendants in this case.

[2] The regulation imposes the same requirement upon an owner of a parcel of land wholly within a designated wetland area.

[3] In addition to the named plaintiff, Mary Paniquitti and Olga Poinelli were named as plaintiffs in this case.

[4] The undisputed aspect of the regulation prohibits the erection of any structure, construction activities, on-site storm water detention or regulated site disturbance activities on the wetland portion of a parcel of land wholly or partially containing wetlands.

commission will issue a certificate of conformance only if it determines that the proposed activity is not "reasonably likely to significantly disturb the natural and indigenous character of the land."[5]

The plaintiffs challenged the regulation in the Superior Court pursuant to General Statutes § 22a-43.[6] In their complaint, the plaintiffs alleged that the commission exceeded its statutory authority in adopting the regulation because the regulation brought within the jurisdiction of the commission activity that would neither occur in, nor impact upon, wetlands. The plaintiffs also claimed that the regulation denied them the equal protection of the laws since it required them to obtain the approval of the commission for activity upon their nonwetland property, but imposed no such requirement upon allegedly similarly situated owners of strictly nonwetland property.

[5] Since the standard incorporated in the regulation tracks the language of General Statutes § 22a-40 (b) in pertinent part, we construe the word "land" in the regulation to refer to a "wetland or watercourse" as does the statute. This construction comports with the definition of the phrase "significantly disturbing the natural and indigenous character of the land" in a related regulation: "the activity will substantially and adversely affect the regulated area by reason of removal or deposition of material, will cause the alteration or obstruction of water flow or will result in the pollution of the *wetland or water course.*" (Emphasis added.) Fairfield Inland Wetlands & Water Courses Regulations § 3.2.

[6] General Statutes (Rev. to 1987) § 22a-43 (a) provides: "Any person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, district or municipality may, within fifteen days after publication of such regulation, order, decision or action appeal to the superior court for the judicial district where the land affected is located, and if located in more than one judicial district, to said court in any such judicial district, except if such appeal is from a contested case, as defined in section 4-166, such appeal shall be in accordance with the provisions of section 4-183, except venue shall be in the judicial district where the land affected is located, and if located in more than one judicial district to the court in any such judicial district. Such appeal shall be made returnable to said court in the same manner as that prescribed for civil actions brought to said court. Notice of such appeal shall be served upon the inland wetlands agency. The appeal shall state the reasons upon

After finding the issues in favor of the commission, the trial court dismissed the plaintiffs' appeal. The plaintiffs appealed to the Appellate Court, and we transferred the appeal to this court in accordance with Practice Book § 4023. On appeal, the plaintiffs argue that the trial court improperly determined that: (1) the commission did not exceed its statutory authority in adopting the amended regulation; and (2) the regulation did not deny them the equal protection of the laws as guaranteed by the federal and state constitutions.[7]

I

The plaintiffs first claim that the regulation is invalid because it exceeds the scope of the Inland Wetlands and Watercourses Act (IWWA) and the regulations adopted by the commissioner of the department of environmental protection (DEP). According to the plaintiffs, the regulatory authority of the commission extends only to statutorily defined "regulated activity" and activity that affects wetlands. They argue that the regulation applies to activity that occurs outside of wetlands and has no impact upon wetlands, and

which it is predicated and shall not stay proceedings on the regulation, order, decision or action, but the court may on application and after notice grant a restraining order. Such appeal shall have precedence in the order of trial."

Although the plaintiffs requested a declaratory judgment and an injunction prohibiting the enforcement of the regulation in their prayer for relief, both the trial court and the plaintiffs treated the case as an administrative appeal pursuant to § 22a-43, rather than an independent action for declaratory and injunctive relief. Accordingly, we regard this case as involving an administrative appeal.

[7] The plaintiffs also claim that the trial court applied the incorrect standard of review in deciding the legal issues in their administrative appeal. Since we review and decide those issues now, and therefore find it unnecessary to remand the case to the trial court for review under the allegedly correct standard, we decline to address the plaintiffs' claim that the trial court applied the incorrect standard of review. Moreover, because we reject the plaintiffs' challenge to the judgment on the grounds relied upon by the trial court, we need not consider the alternate grounds for affirmance presented by the defendants pursuant to Practice Book § 4013 (a) (1) (A).

therefore conclude that the regulation impermissibly expands the jurisdiction of the commission. We disagree.

In evaluating the plaintiffs' claims, we are mindful that the IWWA rests upon a specific legislative finding that "[t]he inland wetlands and watercourses of the state of Connecticut are an indispensable and irreplaceable but fragile natural resource with which the citizens of the state have been endowed," and that "[t]he preservation and protection of the wetlands and watercourses from random, unnecessary, undesirable and unregulated uses, disturbance or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state." General Statutes § 22a-36. Accordingly, the broad legislative objectives underlying the IWWA are in part "to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and watercourses by minimizing their disturbance and pollution . . . [and by] protecting the state's potable fresh water supplies from the dangers of drought, overdraft, pollution, misuse and mismanagement by providing an orderly process to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology in order to forever guarantee to the people of the state, the safety of such natural resources for their benefit and enjoyment of generations yet unborn." General Statutes § 22a-36.

In order to accomplish these objectives, it is the public policy of the state "to require municipal regulation of activities affecting the wetlands and watercourses within the territorial limits of the various municipalities or districts." General Statutes § 22a-42 (a). The designated wetlands agency of each municipality is expressly authorized to promulgate regulations that

"are necessary to protect the wetlands and watercourses within its territorial limits." General Statutes § 22a-42 (c). A regulation deemed "necessary" by a wetlands agency is not inconsistent with the IWWA so long as it is "reasonably designed to effectuate the stated purposes of the wetlands statutes." *Cioffoletti* v. *Planning & Zoning Commission*, 209 Conn. 544, 561, 552 A.2d 796 (1989). The IWWA "envisages its adaptation to infinitely variable conditions for the effectuation of the purposes of these statutes." *Aaron* v. *Conservation Commission*, 183 Conn. 532, 541, 441 A.2d 30 (1981).

While the necessity for protecting wetlands "must be balanced against the productive use of privately owned land; *Red Hill Coalition, Inc.* v. *Conservation Commission*, 212 Conn. 710, 719, 563 A.2d 1339 (1989); we have also indicated that this balancing process is more appropriately conducted in a legislative rather than a judicial setting." *Lizotte* v. *Conservation Commission*, 216 Conn. 320, 336, 579 A.2d 1044 (1990). As a consequence, the commission " 'is vested with a large measure of discretion, and the burden of showing that the agency has acted improperly rests upon the one who asserts it.' " Id., 336–37, quoting *Aaron* v. *Conservation Commission*, supra, 537. "Every intendment is to be made in favor of the validity of the ordinance, and it is the duty of the court to sustain the ordinance unless its invalidity is established beyond a reasonable doubt." *Connecticut Theatrical Corporation* v. *New Britain*, 147 Conn. 546, 553, 163 A.2d 548 (1960); see *Lizotte* v. *Conservation Commission*, supra, 337; *Aaron* v. *Conservation Commission*, supra.

In attempting to establish the invalidity of the regulation, the plaintiffs point to General Statutes § 22a-42a (c), which provides in relevant part that "no regulated activity shall be conducted upon any inland

wetland and watercourse without a permit." The term "regulated activity" is defined in General Statutes § 22a-38 (13) as "any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses . . . ."[8] The plaintiffs also acknowledge our interpretation of the term "regulated activity" in § 22a-42a (c) as encompassing not only activity that occurs within wetlands, but also in some instances, activity that occurs in nonwetlands areas, yet affects wetlands. See, e.g, *Cioffoletti* v. *Planning & Zoning Commission,* supra, 558; *Aaron* v. *Conservation Commission,* supra, 542. In order to demonstrate that the regulation governs activity that does not fall within the meaning of the term "regulated activity," the plaintiffs simply assert that the erection of a structure on the nonwetland portion of a parcel of land containing wetlands will not impact upon the wetlands. We find this assertion insufficient to overcome the presumed validity of the regulation.

Despite the lack of a specific finding that the erection of a structure on a parcel of land containing wetlands might adversely affect the wetlands, we must assume, in the absence of any evidence to the contrary,

[8] The regulations promulgated by the commissioner of environmental protection pursuant to General Statutes § 22a-39 (f) mirror the terms of General Statutes §§ 22a-42a (c) and 22a-38. The regulations require that "[a]ny person wishing to carry out a regulated activity shall submit an application to the local inland wetlands agency." Regs., Conn. State Agencies § 22a-39-5.1.a. The regulations define the term "regulated activity" as "any operation within or use of a wetland or water course as listed in Section 4.2 of these regulations." Regs., Conn. State Agencies § 22a-39-2 (11). Section 22a-39-4.2 of the Regulations of Connecticut State Agencies provides, in turn, that "[t]he local inland wetlands agency or the Commissioner shall regulate only those activities which: (a) remove material from, (b) deposit material in, (c) obstruct, (d) construct, (e) alter, or (f) pollute inland wetlands and water courses."

that the commission considered the potential environmental impact of such an activity, as well as the other factors set forth in General Statutes § 22a-41, before it promulgated the regulation. See General Statutes § 22a-42e; *Lizotte* v. *Conservation Commission,* supra, 334–35; *Carothers* v. *Capozziello,* 215 Conn. 82, 105, 574 A.2d 1268 (1990). Indeed, the legislature has explicitly recognized that the "deposition, filling or removal of material, the diversion or obstruction of water flow, the *erection of structures* and other uses . . . have despoiled, polluted and eliminated wetlands and watercourses." (Emphasis added.) General Statutes § 22a-36. The commission, like the legislature, has expressed particular concern that the unregulated erection of structures "has had, and will continue to have, a significant, adverse impact on the environment and ecology of the Town of Fairfield . . . ." Fairfield Inland Wetlands & Water Courses Regulations § 1.1. The commission could reasonably have determined that the construction activity inevitably accompanying the erection of a structure, albeit on the nonwetland portion of a parcel of land containing wetlands, could pose a significant threat to the environmental stability of the nearby wetlands. The plaintiffs have presented no evidence to the contrary.

In view of the potential hazards associated with the erection of a structure in proximity to wetlands, the commission could reasonably have concluded that regardless of whether such activity may or may not adversely affect wetlands in a particular instance, it was administratively necessary for its approval to be required before any such activity could go forward. Accord *Lizotte* v. *Conservation Commission,* supra, 337; *Aaron* v. *Conservation Commission,* supra, 547; cf. *Cannata* v. *Department of Environmental Protection,* 215 Conn. 616, 629, 577 A.2d 1017 (1990). The commission might otherwise remain unaware of construc-

tion activity destructive to wetlands until the wetlands were damaged beyond repair. Moreover, the regulation does not completely bar the plaintiffs from engaging in such activity. In the event that the plaintiffs propose to erect a structure on the nonwetlands portion of their property, the commission may determine that their proposal would not endanger wetlands and accordingly issue a certificate to them. Should the commission refuse to issue a certificate to the plaintiffs, they can then pursue their claim, backed by a factual record, that the erection of the structure will not impact upon wetlands. See *Cannata* v. *Department of Environmental Protection,* supra, 627, 629.

We conclude, therefore, that the certification requirement imposed by the regulation is a valid administrative device reasonably designed to enable the commission to protect and preserve the wetlands located within Fairfield, in fulfillment of its duty under the IWWA. Accord *Lizotte* v. *Conservation Commission,* supra; *Cioffoletti* v. *Planning & Zoning Commission,* supra, 561. As such, the regulation does not impermissibly expand the scope of the commission's regulatory jurisdiction beyond that authorized by the IWWA and the regulations adopted by the commissioner of the DEP.[9]

---

[9] Without purporting to identify a consideration integral to our decision in this case, we note that contrary to the assertions of the dissent, regulation § 3.3 (xi) does not permit the commission to "limit or prohibit entirely . . . any use of land in nonwetlands areas with the only limitation being that it bear, in the opinion of the commission, some attenuated relationship to the potential protection of designated wetlands," nor does it allow the commission to limit or prohibit the erection of a structure on the nonwetland portion of a parcel of land containing wetlands "without an express balancing of societal needs." See infra. The administrative record reveals that if an agent of the commission refuses to issue a certificate of conformance to an applicant, the applicant is entitled to seek further review of that decision. Further review is available pursuant to § 5.5 of the Fairfield regulations, which provides: "If the [commission] finds that the activity applied for does or may involve a significant or major effect on the wet-

## II

The plaintiffs next claim that the regulation deprives them of the equal protection of the laws as guaranteed by the fourteenth amendment to the United States constitution and article first, §§ 1 and 20, of the Connect-

---

land or water course the [commission] *shall* hold a public hearing on that application. . . ." (Emphasis added.) After a public hearing, the commission renders a final decision on the application. See Fairfield Inland Wetlands & Water Courses Regulations § 6.

In reaching its final decision after a public hearing, the commission is required by § 6.1.4 of the Fairfield regulations, in accordance with General Statutes §§ 22a-42 (e) and 22a-42a (d), to consider in one form or another all of the statutory factors set forth in General Statutes § 22a-41 (a), including: *"The character and degree of injury to, or interference with,* safety, health, or *the reasonable use of property which would be caused or threatened. This includes recognition of . . . destruction of the economic,* aesthetic, recreational and other public *and private uses and values of wetlands and water courses."* (Emphasis added.) Fairfield Inland Wetlands & Water Courses Regulations § 6.1.4.5. The first sentence of this regulation is copied verbatim from subdivision (5) of General Statutes § 22a-41 (a), the only subdivision of § 22a-41 (a) that expressly requires consideration of the potential threat to the reasonable use of property. Furthermore, the commission must consider "[t]he suitability of such action to the area for which it is proposed. *This requires the Agency to balance the need for economic growth of the Town and the use of its land, with the need to protect its environment and ecology* for the people of Fairfield and the benefit of generations yet unborn." (Emphasis added.) Fairfield Inland Wetlands & Water Courses Regulations § 6.1.4.6. The words "balance the need for economic growth . . . and the use of its land with the need to protect its environment and ecology" in this regulation are precisely those used in General Statutes § 22a-36, the only provision of the IWWA, and indeed the only words contained in the IWWA, that explicitly refer to the balancing of economic and environmental interests.

Therefore, the regulatory scheme under which the commission operates ensures that what might be an arbitrary denial of a certificate of conformance is checked through the processes of a public hearing and final review by the commission. That final review involves an individualized consideration of all of the statutory factors set forth in § 22a-41 (a), as well as an express case-by-case balancing of economic and environmental interests that the dissent would find mandatory under § 22a-36. Accordingly, unlike the dissent, we perceive no conflict between the regulation and either § 22a-41 (a) or § 22a-36.

icut constitution.[10] According to the plaintiffs, the classification drawn by the commission, which distinguishes owners of a parcel of land that "happens to contain some wetlands" from owners of strictly nonwetlands property, is not rationally related to the purpose of Fairfield's inland wetlands and watercourses regulations. The plaintiffs contend that by subjecting some, but not all owners of nonwetland property to the jurisdiction of the commission, the regulation treats similarly situated landowners disparately. The plaintiffs maintain, in addition, that the commission should have formulated a more precise and direct classification, such as one distinguishing activity likely to impact upon wetlands or activity occurring within a certain distance of wetlands. We are not persuaded.

The commission promulgated the challenged regulation pursuant to its statutorily delegated police power. See General Statutes §§ 22a-36 and 22a-42. Pursuant to that police power, the commission, acting on behalf of the town of Fairfield, has the right to regulate the use of property within its borders for the legitimate purpose of carrying out the legislative objectives articulated in the IWWA; see General Statutes § 22a-42 (e); and for the equally legitimate purpose of protecting and preserving the natural aquatic resources specifically located within Fairfield. Fairfield Inland Wetlands & Water Courses Regulations § 1.1. The commission is also expressly charged with the duty of promulgating regulations for the enforcement of the IWWA. See General Statutes § 22a-42a (a) (5). "Any such regulation, however, must be reasonably calculated to achieve that purpose; it must have a rational relationship to its objective." *Blue Sky Bar, Inc.* v. *Stratford*, 203 Conn. 14,

---

[10] Because the equal protection provisions of the federal and state constitutions have the same meaning and embody the same limitations; *State Management Assn. of Connecticut* v. *O'Neill*, 204 Conn. 746, 750, 529 A.2d 1276 (1987); we have treated the plaintiffs' equal protection claims together.

22, 523 A.2d 467 (1987); accord *Eisenbud* v. *Suffolk County,* 841 F.2d 42, 45 (2d Cir. 1988); *Faraci* v. *Connecticut Light & Power Co.,* 211 Conn. 166, 168, 558 A.2d 234 (1989).

While the equal protection clauses prohibit the commission from drawing irrational classifications, the commission is not constitutionally required to treat all landowners identically without regard to relevant differences among them. In order for the regulation to withstand an equal protection challenge, the distinctions employed by the commission must " 'be based on natural and substantial differences, germane to the subject and purpose of the [regulation], between those within the class and those whom it leaves untouched.' " *Caldor's, Inc.* v. *Bedding Barn, Inc.,* 177 Conn. 304, 315, 417 A.2d 343 (1979), quoting *Tough* v. *Ives,* 162 Conn. 274, 292–93, 294 A.2d 67 (1972); *New Orleans* v. *Dukes,* 427 U.S. 297, 303, 96 S. Ct. 2513, 49 L. Ed. 2d 511 (1976). The equal protection clauses are offended only if the classification rests on grounds wholly irrelevant to the achievement of the commission's objectives. *Kadrmas* v. *Dickinson Public Schools,* 487 U.S. 450, 462, 108 S. Ct. 2481, 101 L. Ed. 2d 399 (1988).

In scrutinizing the regulation under the "rational relationship" standard, moreover, we must indulge every legal presumption and reasonable inference of fact in its favor. *Blue Sky Bar, Inc.* v. *Stratford,* supra, 24; *Aaron* v. *Conservation Commission,* supra, 537. If there is a reasonable ground for upholding the regulation, we must assume that the commission intended to place it upon that ground. *Blue Sky Bar, Inc.* v. *Stratford,* supra, 23; see *United States Railroad Retirement Board* v. *Fritz,* 449 U.S. 166, 179, 101 S. Ct. 453, 66 L. Ed. 2d 368 (1980), reh. denied, 450 U.S. 960, 101 S. Ct. 1421, 67 L. Ed. 2d 385 (1981); *Mahone* v. *Addicks Utility District,* 836 F.2d 921, 934 (5th Cir. 1988). The

regulation " 'carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality' "; *Kadrmas* v. *Dickinson Public Schools,* supra, 462, quoting *Hodel* v. *Indiana,* 452 U.S. 314, 331–32, 101 S. Ct. 2376, 69 L. Ed. 2d 40 (1981); see *Blue Sky Bar, Inc.* v. *Stratford,* supra, 24; and, therefore, the plaintiffs must establish its constitutional invalidity beyond a reasonable doubt. See *Aaron* v. *Conservation Commission,* supra; accord *Faraci* v. *Connecticut Light & Power Co.,* supra.

After examining the regulation, we conclude that the plaintiffs have failed to sustain their burden of establishing that the classification embodied in the regulation bears no rational relationship to the regulatory objectives of the commission. We have held in Part I above that the regulation is a reasonable response by the commission to the conceivable threat posed by the erection of a structure in proximity to wetlands. See *Kadrmas* v. *Dickinson Public Schools,* supra, 463; *Vance* v. *Bradley,* 440 U.S. 93, 110–11, 99 S. Ct. 939, 59 L. Ed. 2d 171 (1979); *Hancock Industries* v. *Schaeffer,* 811 F.2d 225, 238 (3d Cir. 1987). In addition, the particular distinction embodied in the regulation could reasonably have been designed by the commission as a measure to enhance its ability to enforce the provisions of the IWWA. Accord *Harvey & Harvey, Inc.* v. *Delaware Solid Waste Authority,* 600 F. Sup. 1369, 1382 (D. Del. 1985). It certainly would have been rational for the commission to have concluded that construction activity undertaken by a landowner that imperiled wetlands located on his own property would be less likely to be brought to its attention than identical activity that endangered wetlands located on the property of another. Thus, through the certification process, the commission can detect and prevent environmentally unsound activity that might otherwise escape its notice. Since the classification embodied in

the regulation is reasonably calculated to accomplish the objectives articulated in the IWWA and those specific to the commission, as well as to enforce the provisions of the IWWA, we cannot say that it was arbitrarily or irrationally drawn.

Furthermore, we perceive no constitutional infirmity in the regulation even though the classification employed by the commission could have swept more broadly, or could have more narrowly governed the erection of structures within a given distance of wetlands. The equal protection clauses do not require that the classification be perfectly tailored to achieve its intended objectives. Rather, it need only be rationally related to those objectives, despite the possibility that more inclusive or precise measures can be envisioned. Having determined that the regulation is indeed rationally supportable, we decline to "interpose [our] judgment as to the appropriate stopping point." *Geduldig* v. *Aiello,* 417 U.S. 484, 495, 94 S. Ct. 2485, 41 L. Ed. 2d 256 (1974); *Faraci* v. *Connecticut Light & Power Co.,* supra, 172–73. The commission is entitled to pursue its objectives "step by step . . . adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations." (Citations omitted.) *New Orleans* v. *Dukes,* supra, 303; accord *Correa* v. *Thornburgh,* 901 F.2d 1166, 1174 (2d Cir. 1990). The equal protection clauses do not force the commission to " 'choose between attacking every aspect of a problem or not attacking the problem at all.' " *Geduldig* v. *Aiello,* supra; *Faraci* v. *Connecticut Light & Power Co.,* supra, 173; see *Minnesota* v. *Clover Leaf Creamery Co.,* 449 U.S. 456, 466, 101 S. Ct. 715, 66 L. Ed. 2d 659, reh. denied, 450 U.S. 1027, 101 S. Ct. 1735, 68 L. Ed. 2d 222 (1981).

The judgment is affirmed.

In this opinion PETERS, C. J., and SHEA, J., concurred.

COVELLO, J., with whom CALLAHAN, J., joins, dissenting. I respectfully disagree with the majority's conclusion that the Fairfield conservation commission did not exceed the scope of its authority under the General Statutes in enacting § 3.3 of its Inland Wetlands and Water Courses Regulations. General Statutes § 22a-36 provides: "It is . . . the purpose of [the Inland Wetlands and Watercourses Act] to protect the citizens of the state by making provisions for the protection, preservation, maintenance and use of the inland wetlands and watercourses by minimizing their disturbance and pollution . . . [and] by providing an orderly process *to balance the need for the economic growth of the state and the use of its land with the need to protect its environment and ecology* . . . ." (Emphasis added.) General Statutes § 22a-41 then lists the factors to be considered in carrying out the policies of the act. These factors include the available alternatives, the relationship between short and long term productivity of the land and the "character . . . of . . . interference with . . . reasonable use of property." General Statutes § 22a-41 (a) (5). There is no express provision in the IWWA for a local conservation commission to regulate activities outside of actual wetlands.

In *Aaron* v. *Conservation Commission,* 183 Conn. 532, 542, 441 A.2d 30 (1981), this court concluded that one of the "major considerations" of the IWWA is the impact of activity "which may, in some instances, come from outside the physical boundaries of a wetland." This statement was based, not on any specific language of the statute, but was inferred from provisions such as General Statutes § 22a-38 (13) which define "regulated activity" to include "use of a wetland . . . involving . . . any . . . pollution, of such wetlands . . . ." Id. The court reasoned that because a wetland can be polluted by activities " 'perhaps even remote

from designated wetlands areas' ''; id.; the legislature must have intended that town conservation commissions should be able to regulate activity beyond the limits of the designated wetlands.

The court thereafter expanded this generous construction of the conservation commissions' power even further in *Cioffoletti* v. *Planning & Zoning Commission,* 209 Conn. 544, 561, 552 A.2d 796 (1989), where it concluded that town commissions have the authority under General Statutes § 22a-42 (c) to issue "necessary" regulations controlling nonwetlands areas and that " 'necessary' should not be interpreted as meaning indispensable, but rather, as that which is reasonably designed" to protect wetlands.

More recently, in *Lizotte* v. *Conservation Commission,* 216 Conn. 320, 579 A.2d 1044 (1990), the court approved a conservation regulation establishing a 150 foot buffer zone around wetlands in which all development was prohibited. The court did this even though there was no evidence that the town commission made any attempt, as required by § 22a-36, to balance the competing interests of the need to protect the environment and the right of landowners to the reasonable use of their property.

This court has therefore completed a line of authority that permits a local conservation commission to enact a regulation that may limit or prohibit entirely, without an express balancing of societal needs, any use of land in nonwetlands areas with the only limitation being that it bear, in the opinion of the commission, some attenuated relationship to the potential protection of designated wetlands. Now, with this decision, the court has approved a regulation that effectively controls development of the nonwetlands portion of property at any distance from designated wetlands. This

remarkable expansion of the power of local conservation commissions has been accomplished in the absence of any direct grant of authority in the IWWA.

The judicial gloss on the act provided by this line of cases is not supported by the legislative history. In the 1972 amendments to the IWWA, the legislature specifically addressed the concerns of those who feared that wetlands, as defined by the statute, "could cover 25% of the State of Connecticut" or that wetlands regulation would end up controlling "half the Town of Suffield." Remarks of Representative Thomas M. Kablik, 15 H.R. Proc., Pt. 4, 1972 Sess., pp. 1615–16. Referring to the lack of any existing limits on the authority of local commissions to define and regulate wetlands, Representative Kablik noted that "this is a lousy way to legislate." Id. Many comments expressed concern as to the economic ramifications of the unbridled wetlands regulation. In describing the amendments, which include the balancing test in § 22a-36, Representative David Lavine said: "We want to plan for our growth. We want to plan for our residential needs. We want to plan for our industrial development. Mr. Speaker, what this Bill does is strike a balance. It strikes a balance between the needs of the State and the protection of the peole who have property within the State." 15 H.R. Proc., Pt. 4, 1972 Sess., p. 1612. He specifically noted the activities within wetlands that were permitted under the amendments and stated: "It's our . . . legislative intent . . . Mr. Speaker, to see to it that this is interpreted in the widest possible way." Id. Far from supporting an expansive view of the authority of conservation commissions to regulate beyond the boundaries of designated wetlands, in contradistinction to any statutory provision, the available legislative history suggests an expansive view of *permitted* activities and a desire to insist on protecting the legitimate interests of property owners in the use of their land.

In sum, without any express basis in the statute and in opposition to the existing legislative history, this court has engaged in a process of adding incrementally to the powers of local conservation commissions. The result of this process is that these commissions now may regulate, in the name of wetlands protection, almost any aspect of land use in nonwetlands areas.[1] In a state with over 150 ponds and lakes and innumerable streams, brooks and rivers, it is obvious that the actions of these commissions can have a significant effect on the private use of land and on the state's economic activity. Yet, contrary to the express language of the statute, we have not required the commissions to provide for an explicit balancing of economic and private interests against the potential environmental benefits. I respectfully conclude, therefore, that this court has gone too far, and without adequate justification, in this unilateral grant of power to local conservation commissions and would conclude that the Fairfield regulation is invalid as exceeding its statutory authority. Accordingly, I dissent.

---

[1] It should be noted that in granting conservation commissions the authority to regulate land use in nonwetlands areas, the decisions of this court set up an inevitable conflict between conservation commissions and zoning commissions. General Statutes § 8-2 gives zoning authorities the responsibility to regulate land use, not conservation commissions. As we concluded in the recent decision of *Cristofaro* v. *Burlington*, 217 Conn. 103, 584 A.2d 1168 (1990), land use regulation is primarily the concern of the zoning authority and contradictory land use regulations enacted by other commissions are invalid.