JOHN R. SLIMP ET AL. *v.* DEPARTMENT OF LIQUOR
CONTROL ET AL.
(15454)

Callahan, C. J., and Berdon, Norcott, Palmer and Peters, Js.

Argued November 6—officially released December 31, 1996

*Morton Siegel*, with whom was *John W. Bradley, Jr.*, for the appellants (plaintiffs).

*Robert F. Vacchelli* and *Steven M. Rutstein*, assistant attorneys general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellees (defendants).

CALLAHAN, C. J. This appeal arises out of a license suspension ordered, after a hearing, by the department of liquor control (department). The plaintiffs, Gambrinus Importing Company, Inc.,[1] backer, and John R. Slimp, permittee, were summoned to the hearing to show cause why their out-of-state shipper's beer permit should not be suspended or another penalty imposed for certain alleged violations of the Liquor Control Act and departmental regulations.[2] After the hearing, the department found that the plaintiffs had committed multiple violations of General Statutes §§ 30-94[3] and 30-63 (b),[4] and

---

[1] Gambrinus Importing Company, Inc., is a Texas corporation.

[2] The plaintiffs ship Corona beer products into Connecticut.

[3] General Statutes § 30-94 provides: "No permittee or group of permittees licensed under the provisions of this chapter in transaction with another permittee or group of permittees shall directly or indirectly offer, furnish or receive any free goods, gratuities, gifts, prizes, coupons, premiums, combination items, quantity prices, cash returns, loans, discounts, guarantees, inducements or special prices, or other inducements with the sale of alcoholic beverages or liquors. No permittee shall require any purchaser to accept additional alcoholic liquors in order to make a purchase of any other alcoholic liquor."

[4] General Statutes § 30-63 (b) provides: "No manufacturer, wholesaler or out-of-state shipper permittee shall discriminate in any manner in price discounts between one permittee and another on sales or purchases of alcoholic liquors bearing the same brand or trade name and of like age, size and quality, nor shall he allow in any form any discount, rebate, free goods, allowance or other inducement for the purpose of making sales or purchases."

§ 30-6-A29 (a)[5] and (f)[6] of the Regulations of Connecticut State Agencies. As a consequence, the department imposed a 400 day suspension of the plaintiffs' out-of-state shipper's beer permit for each violation, the penalties to run concurrently, or in lieu of suspension, a fine of $30,000.

Pursuant to General Statutes § 4-183 (a),[7] the plaintiffs appealed the department's decision to the Superior

[5] Section 30-6-A29 (a) of the Regulations of Connecticut State Agencies provides: "No permittee in transactions with another permittee shall directly or indirectly offer, furnish, solicit or receive any free goods, discounts, gratuities, gifts, prizes, coupons, premiums, combination items, quantity prices, cash returns, loans, guarantees, inducements or special prices, or other inducements with the sale of alcoholic liquors."

[6] Section 30-6-A29 (f) of the Regulations of Connecticut State Agencies provides: "Notwithstanding any provisions of this section to the contrary, an out-of-state shipper or manufacturer licensee may offer to wholesaler licensees funds to be used for product promotion as permitted by federal law and in accordance with the following:

"(1) There shall be no restrictions or obligations on the use of such funds, except that such funds shall be used for promotion of the product(s) identified;

"(2) Funds shall be offered without discrimination in any manner among wholesalers authorized to distribute the products to be promoted, except that funds may be pro-rated among such wholesalers based upon population of their authorized geographic territory for the product(s) involved, as determined by the most recently completed decennial census; or based upon any other formula not prohibited by section 30-63 or 30-94 of the general statutes;

"(3) Out-of-state shippers and manufacturers shall file with the Department, at least thirty days before the distribution of funds, written notice listing the following:

"(A) The total amount of funds to be distributed and the proposed date of distribution;

"(B) The product(s) to be promoted and the wholesalers authorized to distribute such products;

"(C) If funds are distributed based on population served, the population in the geographic territories of each wholesaler, and the eligible share of funds expressed as a percentage;

"(D) If any other formula is used, a detailed exposition of such formula used; and

"(E) The amount of promotional funds each is to receive.

"(4) No promotional funds shall be distributed to any wholesaler without approval of the Department."

[7] General Statutes § 4-183 (a) provides: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved

Court. The trial court upheld the department's determination of statutory and regulatory violations and concluded that the department had not abused its discretion by imposing the penalty. The trial court also concluded that the plaintiffs had standing to challenge the constitutionality of General Statutes § 30-63 (c),[8] the price posting statute, even though the department had not alleged or found a violation of § 30-63 (c). On the merits, however, the trial court found no per se violation of the Sherman Antitrust Act, and hence rejected the plaintiffs' constitutional claim that § 30-63 (c) violates the supremacy clause of article six of the United States constitution. The plaintiffs appealed from the trial court's judgment to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

by a final decision may appeal to the superior court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

[8] General Statutes § 30-63 (c) provides: "Each manufacturer, wholesaler and out-of-state shipper permittee shall post with the department, on a monthly basis, the bottle, can and case price, and for beer, the price per keg or barrel or fractional unit thereof, of any brand of goods offered for sale in Connecticut, which price when so posted shall be the controlling price for such manufacturer, wholesaler or out-of-state permittee for the month following such posting. Notice of all manufacturer, wholesaler and out-of-state shipper permittee prices shall be given to permittee purchasers by direct mail or advertising in a trade publication having circulation among the retail permittees except a wholesaler permittee may give such notice by hand delivery. Price postings with the department setting forth wholesale prices to retailers shall be available for inspection during regular business hours at the offices of the department by manufacturers and wholesalers until three o'clock p.m. of the first business day after the last day for posting prices. A manufacturer or wholesaler may amend his posted price for any month to meet a lower price posted by another manufacturer or wholesaler with respect to alcoholic liquor bearing the same brand or trade name and of like age, vintage, quality and unit container size; provided that any such amended price posting shall be filed before three o'clock p.m. of the fourth business day after the last day for posting prices; and provided further such amended posting shall not set forth prices lower than those being met. Any manufacturer or wholesaler posting an amended price shall, at the time of posting, identify in writing the specific posting being met."

On appeal the plaintiffs claim that the trial court improperly concluded that: (1) § 30-6-A29 (f) is a valid exercise of the department's regulatory authority because its terms can be interpreted so as to be consistent with the substantive provisions of the Liquor Control Act; (2) § 30-63 (c) did not violate § 1 of the Sherman Antitrust Act[9] and, therefore, did not implicate the supremacy clause of the United States constitution; and (3) the imposition of a 400 day suspension of the plaintiffs' out-of-state shipper's permit was not an abuse of the department's administrative discretion. We affirm the decision of the trial court regarding the first and third issues; as to the second issue, we conclude that the plaintiffs did not have standing to challenge the constitutionality of § 30-63 (c), and therefore, remand the case to the trial court with direction to dismiss the plaintiffs' constitutional claim.

The facts are not in dispute.[10] The plaintiffs are out-of-state shippers who sell Corona beer products to various wholesalers in Connecticut. In 1992 and 1993, the plaintiffs sponsored a program that returned to Connecticut wholesalers of Corona beer $1.15 for each case of Corona beer that the wholesaler sold during a specified time period. The plaintiffs characterized this program as a product promotion; the industry denominates such a program as a "depletion allowance." Connecticut wholesalers desiring to participate in the plaintiffs' program were required to complete a promotional tracking form, a retail price letter, and a depletion report reflecting the wholesaler's beginning and ending inventory and the amount of sales for the particular period. The wholesalers were not restricted in their use of the

[9] Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, provides in relevant part: "Every contract, combination in the form of a trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

[10] The parties stipulated to the relevant facts at the administrative hearing.

funds obtained as a result of the depletion allowance program.

Our standards of review concerning administrative appeals are statutorily mandated: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." General Statutes § 4-183 (j).

I

The first issue on appeal concerns the scope of protection afforded the plaintiffs' program of depletion allowances under the product promotion exception in § 30-6-A29 (f).[11] This is an issue of statutory interpretation, and as such, this court "can do no more than decide whether the commission upon the facts has mistaken the law and so has acted illegally, or whether it has reached a conclusion untenable in the light of logic and reason." *Aminti* v. *Liquor Control Commission*, 144 Conn. 550, 553, 135 A.2d 595 (1957).

The plaintiffs argue that § 30-6-A29 (f) specifically exempts them from complying with §§ 30-94 and 30-63 (b) and § 30-6-A29 (a). In support of their argument, they point to the following language of § 30-6-A29 (f): "*Notwithstanding any provisions of this section to*

---

[11] See footnote 6.

*the contrary,* an out-of-state shipper or manufacturer licensee may offer to wholesaler licensees funds to be used for product promotion *as permitted by federal law* . . . ." (Emphasis added.) The plaintiffs contend that this regulation provides an exception not only to the regulation but also to the statutes that they are charged with violating. They base their argument on a perceived change in public policy over the years. The plaintiffs argue that §§ 30-94 and 30-63 (b) and § 30-6-A29 (a) express a policy of heavy handed regulation and that such a policy is outdated and no longer viable.[12] The plaintiffs then cite § 30-6-A29 (f) as embodying the current policy regarding liquor control, which, they claim, mirrors federal policy in the area of the regulation of intoxicating liquors. The plaintiffs argue that the policy evidenced in § 30-6-A29 (f) supersedes the policy expressed in §§ 30-94 and 30-63 (b) and § 30-6-A29 (a). The plaintiffs' ultimate conclusion is that their depletion allowance program is permitted by federal law,[13] and

[12] The plaintiffs contend that the statutes and regulation in question were a tie-in to the resale price maintenance program statutes; General Statutes (Rev. to 1981) §§ 30-68a through 30-68c, §§ 30-68e through 30-68h and § 30-68j; which were repealed by No. 81-294 of the 1981 Public Acts. The resale price maintenance program required sellers to sell at or above their "cost." "Cost" was statutorily defined to include a legislatively chosen markup from the seller's purchase price. In this way, the state was assured that liquor would maintain a certain minimum retail price.

[13] Section 10.23 of title 27 of the Code of Federal Regulations provides in relevant part: "Although industry members are not prohibited from offering or giving money or other things of value to a wholesale entity . . . the wholesaler will be considered as acting as a mere conduit between its officers, employees, or representatives and the industry member if,

"(a) There is an agreement or understanding, implied or explicit, that the money or thing of value will be passed on to the officers, employees, or representatives, or

"(b) It is obvious by the very nature of the item given (such as a free trip) that a pass through to the officers, employees, or representatives is clearly contemplated, or

"(c) The records of the recipient wholesaler do not accurately reflect such money or item as an asset of the wholesale entity, thus being subject to all ensuing tax consequences as distinguished from the receipt of the money or item as a personal asset of an officer, employee, or representative."

they therefore cannot be found to have transgressed the state statutory and regulatory provisions that they were charged with violating. We are unpersuaded.

The basis of the plaintiffs' argument is that they are exempted from compliance with §§ 30-94 and 30-63 (b) and § 30-6-A29 (a) as a result of certain language of § 30-6-A29 (f). It is solely by the exception set forth in § 30-6-A29 (f) that the plaintiffs claim that the department incorrectly found violations of the Connecticut statutes and regulations. Therefore, if the exception does not apply, the plaintiffs' argument fails. In support of their argument, the plaintiffs submitted into evidence a letter from Harry L. McCabe, chief of the market compliance branch of the Bureau of Alcohol, Tobacco and Firearms. The letter stated: "Assuming such payments are in compliance with State law, adherence to 27 CFR 10.23 will enable your client to safely act within the purview of the Federal Alcohol Administration Act." The plaintiffs cite the letter as proof that federal law permitted their promotional scheme. They conclude, therefore, that they were provided an exemption from state law pursuant to § 30-6-A29 (f).

The plaintiffs' argument fails for two reasons. First, in his letter, McCabe stated that in rendering his opinion he assumed the plaintiffs' scheme was in compliance with state law. Because the plaintiffs' compliance with state law is still in question, they can only claim that their scheme *may* be permitted by federal law. The letter supports nothing more. Second, § 30-6-A29 (f) contains restrictions in addition to those contained in 27 C.F.R. § 10.23. It provides that out-of-state shippers may offer promotional funds only "as permitted by federal law and *in accordance with the following* [additional restrictions]."[14] (Emphasis added.) In this regard, the trial court noted that "[t]he agency was . . . war-

---

[14] See footnote 6.

ranted in finding a violation of regulation § 30-6-A29 (f) [2] in that the rebates were not paid for promotional purposes 'without discrimination in any manner among wholesalers authorized to distribute the products to be promoted' but were paid according to discriminations made on the basis of amount of product sold." Without reference to a possible conflict between § 30-6-A29 (f) and §§ 30-94 and 30-63 (b), the record supports the department's conclusion that the plaintiffs had not acted in accordance with § 30-6-A29 (f), specifically, subsection (f) (2).

At the department hearing, the named plaintiff testified that the formula used by the plaintiffs to distribute funds was less discriminatory than a formula based upon population.[15] Regardless of the discriminatory or nondiscriminatory effect of the plaintiffs' distribution formula, however, § 30-6-A29 (f) required the plaintiffs to provide the department with a detailed exposition of the distribution formula thirty days before beginning any distribution of funds.[16] They were also required to obtain the department's approval of any formula for the distribution of funds.[17] The plaintiffs conceded at oral argument that they had given no notice and had received no approval.[18]

---

[15] Section 30-6-A29 (f) (2) authorizes discrimination "based upon population of their authorized geographic territory for the product(s) involved, as determined by the most recently completed decennial census; or based upon any other formula not prohibited by section 30-63 or 30-94 of the general statutes."

[16] See footnote 6.

[17] See footnote 6.

[18] Even if we were to conclude that the plaintiffs had complied with § 30-6-A29 (f) and were protected by its "notwithstanding" language, we could not conclude that the regulation somehow cures the plaintiffs' noncompliance with the statutes in question. An administrative regulation is presumed valid unless it is shown to be inconsistent with or beyond the authorizing statute. See, e.g., Mass v. United States Fidelity & Guaranty Co., 222 Conn. 631, 649. 610 A.2d 1185 (1992); Travelers Ins. Co. v. Kulla, 216 Conn. 390, 399, 579 A.2d 525 (1990). If a regulation is shown to be inconsistent with a statute, the regulation is invalidated, not the statute.

Because the department found that the plaintiffs had not acted "in accordance with" the provisions of § 30-6-A29 (f), we conclude that the trial court was correct in determining that the plaintiffs were not exempted from compliance with state law by reason of the "as permitted by federal law" language of § 30-6-A29 (f). The trial court was correct, therefore, in affirming the department's rulings that the plaintiffs had violated §§ 30-94 and 30-63 (b) and § 30-6-A29 (a) and (f).[19]

## II

The plaintiffs' second claim concerns the trial court's conclusion that § 30-63 (c) did not violate § 1 of the Sherman Antitrust Act and, therefore, was not unconstitutional pursuant to the supremacy clause of article six of the United States constitution. The trial court ruled that the plaintiffs had standing to bring the constitutional claim because it found that the department's rationale for enforcing § 30-94 "was the consequential charging of less than the posted price through the operation of the volume rebate, a violation of § 30-63 (c)." While the trial court found that the plaintiffs had standing to raise the constitutional claim, it also found that "the plaintiffs [had] not established that the prohibition on giving discounts or rebates based on volume is on its face a violation of the Sherman Act even though it may, in combination with the posting requirements, have an anticompetitive effect." The plaintiffs contend that § 30-63 (c), the price posting statute, is a per se violation of § 1 of the Sherman Antitrust Act and cannot

---

[19] The trial court affirmed the department's ruling relying, in part, upon its interpretation that "[r]egulation § 30-6-A29 (f) authorizes only those promotional payments that are expressly authorized by federal law. The cited federal regulation refers back to state regulations, and therefore the prohibitions of § 30-6-A29 (a) are unaffected by any federal provision and are applicable." Because we do not reach this issue in our decision, we make no comment on the trial court's interpretation.

be saved by the state action doctrine[20] or a balancing test under the twenty-first amendment[21] to the United States constitution.[22] Since we conclude that the plaintiffs lack standing to raise the constitutional issue, we do not reach the merits of the plaintiffs' claim.

"Standing . . . is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. See, e.g., *Baker* v. *Carr*, 369 U.S. 186, 204, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962); *Stern* v. *Stern*, 165 Conn. 190, 192, 332 A.2d 78 (1973) . . . . *Board of Pardons* v. *Freedom of Information Commission*, 210 Conn. 646, 648–49, 556 A.2d 1020 (1989)." (Internal quotation marks omitted.) *Light Rigging Co.* v. *Dept. of Public Utility Control*, 219 Conn. 168, 172, 592 A.2d 386 (1991). "One who has not been harmed by a statute cannot challenge its constitutional-

---

[20] *Parker* v. *Brown*, 317 U.S. 341, 63 S. Ct. 307, 87 L. Ed. 315 (1943), and its progeny established two standards for antitrust immunity for state action. "First, the challenged restraint must be one clearly articulated and affirmatively expressed as state policy; second, the policy must be actively supervised by the State itself. *City of Lafayette* v. *Louisiana Power & Light Co.*, 435 U.S. 389, 410 [98 S. Ct. 1123, 55 L. Ed. 2d 364] (1978)." (Internal quotation marks omitted.) *California Retail Liquor Dealers Assn.* v. *Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S. Ct. 937, 63 L. Ed. 2d 233 (1980).

[21] The twenty-first amendment to the United States constitution provides in relevant part: "The transportation or importation into any State, Territory or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

[22] If a state statute is not saved from antitrust scrutiny under the state action doctrine, the court must then decide whether "the state's interest should prevail under the balancing process . . . prescribed for cases where the procompetition policy of the federal antitrust laws comes in conflict with a state's exercise of the authority reserved to it by § 2 of the Twenty-First Amendment." *Battipaglia* v. *New York State Liquor Authority*, 745 F.2d 166, 177 (2d Cir. 1984).

ity. *Salgreen Realty Co.* v. *Ives*, 149 Conn. 208, 215, 177 A.2d 673 [1962]. The question of the validity of the statute must be tested by its effect on its attacker under the particular facts of his case. *Karen* v. *East Haddam*, 146 Conn. 720, 727, 155 A.2d 921 [1959]." *Riley* v. *Liquor Control Commission*, 153 Conn. 242, 247, 215 A.2d 402 (1965).

In the present case, the plaintiffs have failed to show how § 30-63 (c) had any impact on them. Section 30-63 (c) simply was not invoked. The department did not cite the plaintiffs for a violation of § 30-63 (c), and the notice and particulars sent to the plaintiffs to apprise them of the complaints against them similarly did not mention a violation of § 30-63 (c). Additionally, the department did not submit evidence of the prices posted by the plaintiffs during the time periods in question or of any reduced prices at which the department claimed they had sold their beer. The trial court determined, however, that the department's enforcement of § 30-94 was necessarily an enforcement of § 30-63 (c).[23] We agree with the trial court that the plaintiffs would have had standing to challenge the constitutionality of § 30-63 (c) if their inducements necessarily implicated price posting or if § 30-63 (c) was enforced against them. Under the circumstances, however, we conclude that the necessary predicates for invoking § 30-63 (c) have

---

[23] In reaching its conclusion, the trial court relied upon a statement made by the department in its memorandum of decision: "[We see] in this same set of facts a program of 'cash returns,' 'rebates,' and 'discounts' in violation of Statutory Sections 30-94, 30-63 (b), and Regulatory Section 30-6-A29 (a), respectively. This is because funds were distributed based on what and how much was sold and thereby illegally induc[ed] more sales and purchases of Gambrinus products at *effectively reduced prices of goods*." (Emphasis added.) The trial court interpreted this statement to mean that the *substance* of the offenses against the plaintiffs involved charging "reduced prices." We disagree. As noted later in this opinion, the substance of the offenses and the direct result of the plaintiffs' product promotion was the inducement of the sale of alcohol.

not been met and therefore disagree with the trial court.[24]

The statutes and regulations in question evidence two fundamental concerns of the legislature. First, the legislature was concerned that there be no favoritism, i.e., no discrimination, in the liquor industry in Connecticut. Section 30-63 (b) serves this purpose because it prohibits discrimination in "any manner in price discounts between one permittee and another." Section 30-63 (c), the price posting statute, also serves this purpose. It requires manufacturers, wholesalers, and out-of-state sellers to post the price at which they will sell their product for the following month and to sell the product at that price for that month. It does not control the price posted by the sellers, but only requires them to sell their product at the posted price to all their customers, large or small.

The second fundamental concern evinced by the statutes and regulations is the legislature's concern that artificial inducements to purchase liquor will result in increased consumption.[25] Section 30-63 (b) also addresses this concern in that it forbids manufacturers, wholesalers, and out-of-state shippers from allowing "in any form any discount, rebate, free goods, allowance or *other inducement* for the purpose of making sales

---

[24] We agree with the trial court, although for a different reason, that § 30-63 (b) does not necessarily implicate § 30-63 (c). In its reasoning, the trial court focused on the discrimination section of § 30-63 (b)—"'price discounts' may be given to a wholesaler or shipper's customers so long as the seller does not 'discriminate' between customers in the discounts . . ."—but the department found a violation of the inducement section of the statute—"the department sees in this same set of facts a program of . . . 'rebates' . . . in violation of . . . [§] 30-63 (b)." For the identical reasons that we conclude that § 30-94 does not implicate § 30-63 (c) under these circumstances, we conclude that the plaintiffs' violation of § 30-63 (b) similarly does not implicate § 30-63 (c).

[25] We can only assume that the legislature felt there was already enough "natural" stimulation inducing the purchase of liquor.

or purchases." (Emphasis added.) The quintessential inducement statute, however, is § 30-94. Enacted as No. 377 of the 1955 Public Acts, § 30-94 was the rewrite and codification of a liquor control commission regulation that had been in effect since 1939.[26] The purpose of the act, entitled "An Act Concerning Illegal Inducements to Purchase," is clear from the legislative history. In a liquor control committee session on April 6, 1955, Gaynor Brennan, an attorney representing the Connecticut Wholesaler Liquor Dealers, commented on the proposed bill, SB-1111, as follows: "The purpose is to prevent artificial stimulation of sales of liquor at any level." Conn. Joint Standing Committee Hearings, Liquor, 1955 Sess., p. 79. Senator James E. Foley, who moved for passage of the bill in the state Senate, explained the provision as follows: "This is what we call the inducement bill and it tries to make impossible a tie-in . . . . It is an inducement to purchase this liquor by a consumer or if a wholesaler wanted to sell a stock of goods to some retailer he could try to do it with some kind of tie-in. This is to prevent that kind of an inducement, or else he could give an alarm clock or

---

[26] When promulgated in 1939, the regulation provided as follows: "Inducement to Purchase. No permittee shall directly or indirectly offer or furnish any gifts, prizes, coupons, premiums, or similar inducements with the sale of any alcoholic beverages. Nothing herein shall prohibit the furnishing of advertising novelties of nominal value." Regs., Liquor Control Commission § 19, Connecticut Law Journal Vol. 7, No. 30, p. 246 (August 31, 1939).

The regulation was subsequently amended, including the addition of a statement of purpose, to provide as follows:

"Inducements to Purchase. No permittee in transaction with another permittee shall directly or indirectly offer, furnish or receive any free goods, discounts, gratuities, gifts, prizes, coupons, premiums, combination items, quantity prices, cash returns, loans, guarantees, inducement or special prices, or other inducements with the sale of any alcoholic liquors.

"No permittee shall require any purchaser to accept additional liquors in order to make a purchase of any particular, desired item."

"(These provisions shall apply to all types of permittees, and are intended to prevent artificial stimulation of sales of liquor by any means.)" Regs., Liquor Control Commission § 151-20, Connecticut Law Journal Vol. 15, No. 37, p. 5 (February 23, 1948).

some similar merchandise. It is illegal." 6 S. Proc., Pt. 4, 1955 Sess., p. 1206. The purpose of § 30-94 was to eliminate incentive or inducement programs that would artificially increase the consumption of alcohol by tying an additional benefit to its purchase.

The trial court implicitly agreed with the position that § 30-94 does not necessarily implicate § 30-63 (c). It stated in its memorandum of decision that "the agency might be in the position of enforcing only § 30-94 if a shipper offered a gift or a prize to a customer . . . ." The trial court, however, also found that if money were exchanged, "the issue of the price posting scheme *is* part of the enforcement proceeding and is fairly raised as an issue in the appeal." (Emphasis added.) We disagree. We believe it is more appropriate to analyze the structure of the promotion challenged rather than the form of the benefit given to determine whether the promotion is properly characterized as an inducement to the sale of more alcohol or a scheme to reduce the sales price of the plaintiffs' product below the posted price.[27]

A depletion allowance program, the type of program used by the plaintiffs, consists of a seller's compensating a buyer according to the amount of goods the buyer has sold during a specified time period. The benefit given to the buyer is contingent upon the buyer's success in selling the product to consumers. Because the size of the benefit is tied to the number of sales, a depletion allowance program induces the buyer to sell as much of the product as possible. The obvious pur-

---

[27] We recognize that any discount, rebate, or cash return effectively reduces the price of the product sold. In theory, however, any benefit received by the purchaser in addition to the product sold can be characterized as effectively reducing the sale price. Instead of drawing a line between cash and noncash gifts to distinguish between those transfers that necessarily implicate the price posting statute and those that do not, we choose instead to look at the direct result of the program in question.

pose and direct result of the plaintiffs' depletion allowance product promotion, therefore, was the inducement of sales from the wholesalers to retailers, not the reduction of the effective sales price of the product.[28]

Moreover, the plaintiffs' depletion allowance program regularly altered the specific products that were the subject of the promotion. The promotion at different times targeted the plaintiffs' different labels, i.e., Corona Extra, Corona Light, Negra Modelo, and Pacifico Clara, by tying the benefit to the product. The targeting of specific products for depletion allowances supports the conclusion that the primary goal of the program was the inducement of sales of the plaintiffs' selected products and not the effective reduction of the sales price.

In sum, we determine that the product promotion program run by the plaintiffs, as evidenced by the structure of the program itself, was an inducement to sell more alcohol. Any consequent theoretical reduction of the sales price does not by itself implicate § 30-63 (c). Furthermore, even if the department could have charged the plaintiffs with a violation of § 30-63 (c), it did not do so.[29] We conclude, consequently, that the

---

[28] Had a reduction in sales price been the goal, the plaintiff could have tied the cash return to the quantity of product bought by the wholesaler from the plaintiffs rather than the quantity sold by the wholesaler to the retailers. While this scheme would also violate § 30-94, it *would* necessarily implicate the price posting statute, because the practical result of the program would be a reduced purchase price. In this way, the department would not be able to avoid court review of the price posting scheme by a simple recharacterization of the alleged violation. Similarly, we will not allow the plaintiffs to achieve judicial review by a simple recharacterization of the alleged violation.

[29] We note that the plaintiffs could have availed themselves of General Statutes §§ 4-176 or 4-175 in their effort to have the constitutionality of § 30-63 (c) determined.

Section 4-176 provides in relevant part: "(a) Any person may petition an agency, or an agency may on its own motion initiate a proceeding, for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency."

plaintiffs have no standing to challenge the constitutionality of § 30-63 (c) and therefore do not address the merits of their constitutional claim.

III

The plaintiffs' third issue is whether the penalty imposed by the department on the plaintiffs for their statutory and regulatory violations constituted an abuse of discretion. Our standard of review is derived from § 4-183 (j) (6), which requires us to affirm the department's decision unless it is "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

The plaintiffs' penalty consisted of a 400 day suspension of their out-of-state shipper's beer permit for each violation, the suspensions to run concurrently. The plaintiffs were given the option of paying a $30,000 fine in lieu of the suspension. The plaintiffs claim the penalty imposed is an abuse of the department's discretion because it is excessive on its face and in light of the circumstances surrounding the promotion. The plaintiffs provide no evidence in the record by which we can examine the claimed excessiveness of the penalty. Without at least some evidence of penalties previously imposed by the department, and the circumstances of their imposition, we cannot conclude that the penalties

---

Section 4-175 provides in relevant part: "(a) If a provision of the general statutes, a regulation or a final decision, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff and if an agency (1) does not take an action required by subdivision (1), (2) or (3) of subsection (e) of section 4-176, within sixty days of the filing of a petition for a declaratory ruling, (2) decides not to issue a declaratory ruling under subdivision (4) or (5) of subsection (e) of said section 4-176, or (3) is deemed to have decided not to issue a declaratory ruling under subsection (i) of said section 4-176, the petitioner may seek in the superior court a declaratory judgment as to the validity of the regulation in question or the applicability of the provision of the general statutes, the regulation or the final decision in question to specified circumstances. The agency shall be made a party to the action."

imposed in this instance were an abuse of the department's discretion. We have no evidence by which to gauge any claimed deviation.

Moreover, despite the plaintiffs' argument to the contrary, the fact that certain mitigating factors claimed by the plaintiffs were not explicitly mentioned in the department's memorandum of decision does not require a conclusion that the department abused its discretion; it may well have considered those factors in arriving at the penalty. "[T]he court cannot, on an appeal, substitute its discretion for that vested in the liquor control commission . . . . *DeMond* v. *Liquor Control Commission*, [129 Conn. 642, 646, 30 A.2d 547 (1943)]." (Internal quotation marks omitted.) *Sumara* v. *Liquor Control Commission*, 165 Conn. 26, 31–32, 327 A.2d 549 (1973). "[T]he granting, revocation and suspension of liquor permits [are] primarily administrative functions in the exercise of the executive power of government, and if a court were to substitute its discretion for that of the commission, it would be unconstitutionally exercising an executive function." Id., 31. General Statutes § 30-55[30] authorizes the department of liquor control to revoke or suspend permits "upon cause found" after a hearing. The statute provides no additional factors in addition to "cause" that must be taken into consideration when the department imposes any pen-

[30] General Statutes § 30-55 provides in relevant part: "(a) The department of liquor control may, of its own motion, revoke or suspend any permit upon cause found after hearing, provided ten days' written notice of such hearing has been given to the permittee setting forth, with the particulars required in civil pleadings, the charges upon which such proposed revocation or suspension is predicated and provided no permit shall be suspended or revoked for any violation of this chapter of which the permittee or his servant or agent was finally found not guilty by, or received dismissal in, a court having jurisdiction thereof, and no disciplinary action shall be taken thereafter by said department against the backer or such permittee, servant or agent, and provided the department shall not initiate hearing proceedings pursuant to this section based upon any arrest which has not resulted in a conviction."

alty, including revocation. If the department had the power to revoke a permit, it necessarily had the power to suspend the permit for a period of time, even a lengthy period of time. We conclude that we have no evidence that the department abused its discretion when imposing penalties on the plaintiffs.

The judgment is affirmed as to both the first and third issues; as to the second issue, i.e., the constitutionality of § 30-63 (c), the judgment is reversed and the case is remanded with direction to dismiss the plaintiffs' constitutional claim.

In this opinion the other justices concurred.