[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issue in this administrative appeal is the legality of certain amendments to the Branford Inland Wetlands and Watercourses Regulations. For the reasons set forth below, the amendments in question comport with the applicable law.
On July 29, 1999, the defendant Inland Wetlands Commission of the Town of Branford adopted a number of amendments to the Inland Wetlands and Watercourses Regulations of the Town of Branford. The appeal now before the court does not attack all of the amendments so adopted. The bulk of the plaintiffs' argument focuses on two of the amendments. One of these amendments, Reg. § 2.1jj, is the cynosure of the case. That amendment defines the term "regulated activity" as follows:
 "Regulated activity" means any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution of such a wetland or watercourse, but shall not include the activities specified in section 4 of these regulations. [Section 4 specifies permitted uses as of right and non-regulated uses.] Furthermore any clearing, grubbing, filling, grading, paving, excavating, constructing, depositing or removing of material and discharging of storm water in the following areas is a regulated activity:
 1.) on land within 100 feet measured horizontally from the boundary of any wetland or watercourse, CT Page 10784 provided
 2.) The Agency may rule that any other activity located within such upland review area or in any other non-wetland or non-watercourse area is likely to impact or affect wetlands or watercourses and is a regulated activity.
The plaintiffs additionally attack Reg. § 2.1oo(5), which is part of the definition of "significant activity." That regulation provides, in relevant part, that:
 "Significant activity" means any activity including, but not limited to, the following activities which may have a substantial effect on the area for which an application has been filed, or any other part of the wetland of [sic] watercourse system:
. . . .
 5.) Any activity which causes a substantial diminution of flow of a natural watercourse, or groundwater levels of the regulated area. . . .
Other arguments advanced by the plaintiffs are discussed below.
The Commission's decision to adopt the amendments in question was published on August 8, 1999.
On August 20, 1999, this appeal was commenced by service of process by the plaintiffs, Queach Corporation and Vivian Vigliotti. The defendants are the Commission and the State Commissioner of Environmental Protection. The appeal attacks the facial legality of the amendments in question. See Stafford Higgins Industries, Inc. v. City of Norwalk,245 Conn. 551, 582, 715 A.2d 46 (1998). The plaintiffs do not allege that the Commission has taken any adverse action with respect to them based on these amendments. The appeal was heard on August 14, 2000. The filing of supplemental briefs was completed on August 29, 2000.
The evidence submitted by the plaintiffs establish that they own land within one hundred feet of the land involved in the decision of the Commission, including a substantial area of wetlands. The plaintiffs are thus "aggrieved persons" entitled to take this appeal. Conn. Gen. Stat. § 8-8 (a)(1) (b). Because the plaintiffs are "statutorily aggrieved," the Court has subject matter jurisdiction to hear their CT Page 10785 appeal regardless of whether they are "classically aggrieved." Smith v.Planning Zoning Board, 203 Conn. 317, 321, 524 A.2d 1128 (1987). It should be kept in mind, however, that the appeal only challenges the facial validity of the amendments in question and that the question of whether the amendments are valid as applied must be reserved for future cases in which adverse decisions applying those amendments are presented to the Court.
The facial validity of the amendments in question must now be considered. Most of the plaintiffs' fire is trained upon Reg. § 2.1jj. The plaintiffs contend that this regulation conflicts with two different statutory provisions. The first of these provisions is Conn. Gen. Stat. § 22a-38 (13), which defines the term "regulated activity" as "any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses," while excluding "the specified activities in section 22a-40 [itemizing certain permitted operations and uses]." The plaintiffs argue that because, in their view, the definition of "regulated activity" in Reg. § 2. 1jj is broader than the corresponding definition in Conn. Gen. Stat. §22a-38 (13), the regulatory definition cannot stand.
The plaintiffs additionally rely on Conn. Gen. Stat. § 22a-42a(f), which provides that:
 If a municipal inland wetlands agency regulates activities within areas around wetlands or watercourses, such regulation shall (1) be in accordance with the provisions of the inland wetlands regulations adopted by the agency related to application for, and approval, of, activities to be conducted in wetlands and watercourses and (2) apply only to those activities which are likely to impact or affect wetlands or watercourses.
In the plaintiffs' estimation, Reg. § 2.1jj encompasses activities that are not "likely to impact or affect wetlands or watercourses."
"An administrative regulation is presumed valid unless it is shown to be inconsistent with or beyond the authorizing statute." Slimp v.Department of Liquor Control, 239 Conn. 599, 607 n. 18, 687 A.2d 123
(1996). The plaintiffs' arguments here must be evaluated against the backdrop of the broad construction that our Supreme Court has given the Inland Wetlands and Watercourses Act, Conn. Gen. Stat. §§ 22a-36 to22a-45, inclusive:
CT Page 10786 The legislature has expressed a strong public policy in favor of protecting and preserving the natural resources, and particularly the wetlands, of this state. "The inland wetlands and watercourses of the state of Connecticut are an indispensable and irreplaceable but fragile natural resource with which the citizens of the state have been endowed. The wetlands and watercourses are an interrelated web of nature essential to an adequate supply of surface and underground water; to hydrological stability and control of flooding and erosion; to the recharging and purification of groundwater; and to the existence of many forms of animal, aquatic and plant life. . . . The preservation and protection of the wetlands and watercourses from random, unnecessary, undesirable and unregulated uses, disturbance or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state." General Statutes § 22a-36; see Mario v. Fairfield, 217 Conn. 164, 168, 585 A.2d 87 (1991); Cioffoletti v. Planning Zoning Commission, 209 Conn. 544, 559-60, 552 A.2d 796 (1989); see also General Statutes § 22a-1.
Commissioner of Environmental Protection v. Connecticut Building WreckingCo., 227 Conn. 175, 198-99, 629 A.2d 1116 (1993). "In light of this emphatic statement of protecting wetlands, " the scope of the Inland Wetlands and Watercourses Act is to be broadly construed. Id. at 199.
In addition to these general principles, there is specific caselaw construing the statutory term "regulated activity" "as encompassing not only activity that occurs within wetlands, but also in some instances, activity that occurs in nonwetlands areas yet affects wetlands." Mariov. Fairfield, supra, 217 Conn. at 170. Mario upheld an inland and watercourses regulation applicable to construction activity on parcels of land that are partially contained within designated wetlands areas. The regulation in question required that before the owner of such a parcel could erect a structure on the nonwetlands portion of the parcel, a "certificate of wetlands conformance" must be obtained from the commission. 217 Conn. at 165. Similarly, Cioffoletti v. Planning ZoningCommission, supra, upheld a commission s regulation of mining and excavation in areas adjacent to the inland wetlands because there was evidence that these activities would adversely affect wetlands areas.209 Conn. at 558. The seminal case on this subject, Aaron v. ConservationCommission, 183 Conn. 532, 441 A.2d 30 (1981), held that "activity that occurs in nonwetlands areas, but that affects wetlands areas, falls CT Page 10787 within the scope of regulated activity." Cioffoletti v. Planning ZoningCommission, supra, 209 Conn. at 558. These cases emphatically hold that the statutory term "regulated activity" is to be broadly construed as applying to activity that occurs in nonwetlands areas that affects wetlands.
In light of this strong case authority it cannot be held that Reg. § 2.1jj is invalid because of its breadth. The second sentence of the regulation can be reasonably viewed as an itemization of specific activities that can be reasonably regulated under the controlling statute rather than as an expansion of that statute. The 100 ft. buffer zone established by subsection (1) of the regulation is a reasonable regulation in view of the purposes of the act. Similarly, the powers given the Commission by subsection (2) of the regulation to regulate other activity "likely to impact or affect wetlands or watercourses" is in keeping with the broad powers bestowed on inland wetlands agencies byAaron and its progeny. In all of these respects, moreover, Reg. 2.1jj conforms to models provided in a model municipal upland review area regulation drafted and distributed by the State Department of Environmental Protection.
The plaintiffs contend that the caselaw just reviewed was limited by the enactment of 1995 Conn. Acts 95-313 § 3, codified at Conn. Gen. Stat. § 22a-42a(f). That statute, however, does nothing of the sort. Sec. 22a-42a(f) does not even purport to restrict the Supreme Court's construction of the term "regulated activity." As it happens, the statute does not even employ that particular term of art. Rather, the statute provides that the regulations of a municipal inland wetlands agency shall "apply only to those activities which are likely to impact or affect an inland wetlands area." This statement simply codifies the relevant caselaw. The legislative history of the statute supports this interpretation. See 1995 H.R. Proc. 7430 (statement of Rep. Stratton). Under these circumstances, the plaintiffs' argument that § 22a-42a(f) was designed to overrule cases like Mario simply cannot be sustained.
The plaintiffs' additional argument that the one hundred foot buffer established by Reg. § 2.1jj(1) is not supported by evidence in the record is unpersuasive. The regulation in question was adopted after a full public hearing. One of the documents before the Commission was a set of model municipal upland review area regulations drafted and distributed by the State Department of Environmental Protection. This document states that, "The DEP believes that a 100 foot-wide upland review area is sufficient for reviewing construction activities in areas surrounding wetlands or watercourses because most of the activities which are likely to impact or affect these resources will be located in that area." Even the plaintiffs' attorney, writing to the Commission on July 29, 1999, CT Page 10788 referred to this guideline approvingly. The attorney simply argued instead that "anything greater than a 100 foot buffer is unreasonable." Under these circumstances, the one hundred foot buffer cannot be said to be without support in the evidence.
The plaintiffs' attack on the groundwater provision of Reg. § 2.1oo (5) must meet a similar fate. The list of "significant activities" promulgated in § 2.1oo is consistent with the legislative findings set forth in Conn. Gen. Stat. § 22a-36. The challenged subsection, identifying "[a]ny activity which causes a substantial diminution of flow of a natural watercourse, or groundwater levels of the regulated area" as a "significant activity," focuses on the impact of the activity in question on the regulated resource. An activity causing "a substantial diminution of flow of a natural watercourse or groundwater levels" can plainly have an adverse effect on the health of the affected wetland or watercourse. The regulation is consistent with the broad construction given the Inland Wetlands and Watercourses Act by our Supreme Court.
The plaintiffs finally argue that several sections of the regulations in question "have the effect of requiring an applicant to submit alternatives to the Commission even if the proposed use of property does not have any affect or impact upon wetlands and watercourses." The plaintiff cites, in this respect, Reg. §§ 7.4(f) 10. Reg. § 7.4 (f) requires an application to undertake a regulated activity to include "[a]lternatives considered by the applicant and why the alternatives were rejected in favor of the regulated activity(ies) proposed in the application." Reg. § 10.3 provides that, "In the case of an application which received a public hearing pursuant to a finding by the Agency that the proposed activity may have a significant impact on wetlands or watercourses, a permit shall not be issued unless the Agency finds on the basis of the record that a feasible and prudent alternative does not exist." These provisions apply only to applications to undertake regulated activities. For reasons already states, the regulatory definition of "regulated activity" is valid. In carrying out the purposes and policies of the Inland Wetlands and Watercourses Act, it is legitimate for the commission to consider "all relevant facts and circumstances." Conn. Gen. Stat. § 22a-41 (a). One relevant fact identified by our legislature is the existence of "any feasible and prudent alternatives to the proposed regulated activity which alternatives would cause less or no environmental impact to wetlands or watercourses." Conn. Gen. Stat. § 22a-41 (a)(2). Under these circumstances, the regulatory requirement of the listing of alternatives is reasonable and consistent with the broad legislative mandate given the Commission.
For the reasons set forth above, the regulations in question are facially valid. As discussed above, the question of whether they are CT Page 10789 valid as applied must await a future case in which that question is presented.
The appeal is dismissed.
 Jon C. Blue Judge of the Superior Court