[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter commenced with a support petition brought by the State of Connecticut on behalf of the named plaintiff, Margarita Correa, and for its own interests. The State recites General Statutes §§ 17-324, 46b-215
and/or 46b-172 as its authority to bring the action. Notwithstanding the multiple choice nature of the citation of authority, the court presumes that the State actually relies on General Statutes § 46b-172 (c) which specificaliy addresses the circumstances of this case, rather than General Statutes § 17-324 which was repealed and General Statutes § 46b-215 which has much more general support language.
The petition itself, contrary to the requirements of Practice Book § 10-1 does not fact plead by reciting "a plain and concise statement of the material facts . . . divided into paragraphs numbered consecutively." Instead, the petition incorporates by reference a "verified statement of facts" which purports to set forth the factual basis of the claim.
The verified statement alleges that the child subject of the petition CT Page 13076 is Tiana Correa, born January 10, 1991. The named plaintiff is cryptically identified only as a "supervising relative". The defendant is alleged to be the "acknowledged father". There are no facts set forth in either the petition, the verified statement or any appended document supporting that legal conclusion. The petition with appended verified statement was served in hand upon the defendant on March 22, 2001.
The named plaintiff and the named defendant were both present in court on the designated hearing date and filed appearances. The State filed a certified copy of an acknowledgment of paternity form which had been acknowledged by the defendant on October 26, 2000 and affirmed by the plaintiff on August 10, 2000. The form was apparently filed with the Department of Public Health, although the filing date is not evident from the copy provided. The registrar of vital records certified the proffered copy on February 20, 2001. From this document it can be ascertained that the named plaintiff is Tiana's mother and the defendant, her father. Since the parents do not reside together, the court granted the petition and entered support orders, ancillary orders including health care coverage, and made arrearage findings, all of record in the court file.
At the conclusion of the proceedings the State requested that the defendant be ordered to pay for the cost of a genetic test. The court questioned its authority to enter such an order. No laboratory report had been produced nor was there a bill or statements for the costs. The State did not have these documents present in court and requested leave to file the documents within ten days. The parties did not object so the court allowed the subsequent filing. On May 24, 2001, the Department of Social Services filed copies of two computer print-outs from LabCorp, portions of which purport to show charges totaling $145.50 relating to the parties in this case[1].
Parentage has not been adjudicated in the action pending before this court. Rather, the State relies on the written acknowledgment of paternity. The acknowledgment operates "in lieu of" a paternity adjudication and has "the same force and effect as a judgment of the Superior Court." General Statutes § 46b-172 (a)(1). The court takes no part in the establishment of paternity under this provision. The document itself is "considered a legal finding of paternity without requiring or permitting judicial review. . . ." Id. It is not in any sense of the word an adjudication.
In this matter, no paternity petition was ever filed with the court. Instead, the paternity issue was concluded administratively under the auspices of the Department of Social Services. As part of this process the Department of Social Services has the statutory authority to require genetic testing. "In any IV-D support case. . . . in which the paternity CT Page 13077 of a child is at issue, the IV-D agency shall require the child and all other parties . . . to submit to genetic tests . . . to determine whether or not the putative father or husband is the father of the child, upon the request of any such party." General Statutes § 46b-168a(a). Apparently this procedure was invoked to procure DNA tests in this case.
"The costs of making the tests . . . shall be paid by the state, provided if the putative father is the requesting party and he is subsequently adjudicated to be the father of the child, he shall be liable to the state for the amount of such costs to the extent of his ability to pay, in accordance with regulations adopted by the Commissioner of Social Services." (emphasis added) General Statutes § 46b-168a(b). The plain language of the statute places the costs of administratively ordered tests on the State except for one specifically limited situation[2]. If the putative father is the party requesting the tests, then he becomes liable to the State for the costs of the test. The statute does not require, or even authorize the court to order this payment. "The declaration that a party may be liable for a certain debt is a far cry from authorizing this statutory court to order him to pay that liability." Romero v. Roberts, 15 S.M.D. ___ (2001).
"[T]here is no express grant of authority in General Statutes §46b-168a authorizing the family support magistrates to order the requesting party to reimburse the state for the costs of genetic testing when such testing was ordered by Department of Social Services. Moreover, there is no such express grant of power in the Family Support Magistrate Act." Morrison v. Lindberg, 14 S.M.D. 345, 347,28 Conn. L. Rptr. 611, 2000 Ct. Sup. 14094 (2000); Figueroa v. Molina, 14 S.M.D. 318, 320, 28 Conn. L. Rptr. 336, 2000 Ct. Sup. 13165 (2000)[3].
"Nor is it within the power of the court to deem the DNA test a cost of the action. It is noteworthy that in this case, not only was the test ordered outside the jurisdiction of the court, but before the action waseven filed. The court can not interpret the phrase `he shall be liable' to usurp a power to order a payment on a debt that predated the filing of the action absent specific statutory authority[4]." (emphasis in original) Romero v. Roberts, 15 S.M.D. ___ (2001). "Courts cannot, by construction, read into statutes provisions which are not clearly stated." Houston v. Warden, 169 Conn. 247, 251, 363 A.2d 121 (1975);Jennings v. Hariston, 23 Conn. L. Rptr. 1, 1999 Ct. Sup. 1580, 1582 (1999).
General Statutes § 46b-168a(c)(3) requires the Commissioner of Social Services to adopt regulations "to establish criteria for determining the ability of the requesting party to pay the costs of the genetic tests." In accordance with this requirement, the Commissioner of Social Services passed a regulation which sets forth the criteria for determining CT Page 13078 the ability of a requesting party to pay the costs of the genetic tests. Section 46b-168a-1 (c) of the Regulations of Connecticut State Agencies provides the following: "A putative father who requests genetic tests under [General Statutes § 46b-168a] and subsequently acknowledges paternity or is adjudicated to be the father of the child shall be liable to the state for the costs of making such tests if the IV-D agency or family support magistrate finds that such father has sufficient income under [the Child Support and Arrearage Guidelines] to pay current support for such child."[5]
It is readily apparent that the regulation goes beyond the authority granted by General Statutes § 46b-168a(c) to the Commissioner of Social Services. General Statutes § 46b-168a(b) applies fathers who are lateradjudicated. Section 46b-168a-1(c) of the Regulations of Connecticut State Agencies purports to apply to fathers who are later adjudicated such and fathers who subsequently acknowledge paternity after the genetic testing is completed. It is implicit from the language of the regulation that it purports to apply liability to two classes of fathers: those later adjudicated and those who subsequently acknowledge paternity. The statute only applies to the former. The clear language of the regulation is in conflict with the statute. "If a regulation is shown to be inconsistent with a statute, the regulation is invalidated, not the statute." Slimp v.Dept. of Liquor Control, 239 Conn. 599, 617 n. 18, 687 A.2d 123 (1996).
Even if the regulation could somehow be read as consistent with the statute there remains no authority under the aegis of the present action for the court to order and enforce the payment. Had the legislature intended the Family Support Magistrate to have the authority to order the payment of an administratively required genetic test, it could have easily done so. Clearly this court has no jurisdiction to order the putative father to pay this debt[6]. Where the Department of Social Services believes that a liability exists under the regulation, it can pursue it the same way most liabilities are collected: send a bill.
This court finds that it lacks subject matter jurisdiction to order the defendant to pay the costs of the administratively ordered genetic test. The Family Support Magistrate Division is a statutory court and is limited to act within the statutory powers granted to it. Holden v.Skinner, 7 S.M.D. 19, 24 (1993). "The Family Support Magistrate is not a Judge of the Superior Court and does not have full judicial powers, Conn. Constitution, Article Fifth; Article XX of Amendments; Article XXV of Amendments; Brown v. O'Connell, 36 Conn. 432 (1870); Betts v. Town ofNew Hartford, 25 Conn. 180 (1856); Osborn v. Stamford Zoning Board ofAppeals, 11 Conn. Sup. 489 (1943). The judicial powers of the Family Support Magistrate are limited to those established by the General Assembly in the Family Support Magistrate's Act, General Statutes § CT Page 1307946b-231, and related sections and public acts." Dalley v. Wineglass, 11 S.M.D. 1, 26 (1997); Jorgensen v. Jorgensen, 1 S.M.D. 34 (1987).
Unlike a judge of the Superior Court, the powers of a Family Support Magistrate to enforce support orders are wholly statutory. General Statutes § 46b-231 (m)(1) and (7) Reynolds v. Allicock, 15 S.M.D. ___, 2001 Ct. Sup. 2456 (2001). Where an action "depends upon statutory authority . . . noncompliance with the statutory requirements . . . implicates subject matter jurisdiction and renders a nonconforming [action] subject to dismissal." Tolly v. Department of Human Resources,225 Conn. 13, 27, 621 A.2d 719 (1993); McQuillan v. Department of LiquorControl, 216 Conn. 667, 670, 583 A.2d 633 (1990); Tarnopol v. ConnecticutSitting Council, 212 Conn. 157, 163, 561 A.2d 931 (1989); HillcroftPartners v. Commission on Human Rights Opportunities, 205 Conn. 324,326-27, 533 A.2d 852 (1987); Chestnut Realty, Inc. v. Commission on HumanRights Opportunities, 201 Conn. 350, 356, 514 A.2d 749 (1986);Basilicato v. Department of Public Utility Control, 197 Conn. 320, 324,497 A.2d 48 (1985); Exchange Buffet Corporation v. Rogers, 139 Conn. 374,376, 94 A.2d 22 (1952); Collins v. Beaver, 14 S.M.D. 432, 435,2000 Ct. Sup. 16290 (2000); Greenwood v. Velsor, 7 S.M.D. 65, 71, 13 Conn.Fam.L.J. 15 (1993). "Absent clear statutory authority that is not apparent to this court, the request for an order requiring the defendant to pay the costs of the genetic test remains ultra vires[7]." (footnote in original) Romero v. Roberts, 15 S.M.D. ___ (2001).
Accordingly, for the reasons stated, the State's request for costs is denied.
BY THE COURT
Harris T. Lifshitz Family Support Magistrate