[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Alan Mello, Cheryl Mello and Elizabeth Rea,[1] appeal a decision by the defendant, the Washington inland wetlands and conservation commission (the commission) granting the defendants, Jay and Peggy Sheinfeld, a permit to conduct regulated activities associated with the subdivision of their property at 112 Lower Church Hill Road. The commission acted pursuant to General Statutes § 22a-42, town ordinance, and commission regulations. (Amended Appeal, ¶¶ 6, 7; Answer, ¶¶ 6, 7.)
 FACTS
Alan and Cheryl Mello own property at 104 Lower Church Hill Road in the town of Washington, Connecticut. (Plaintiffs' Exhibits 1, 3.) Elizabeth Rea owns property at 53 West Church Hill Road. (Plaintiffs' Exhibits 5, 6.) Jay and Peggy Sheinfeld own property at 112 Lower Church Hill Road. (Plaintiffs' Exhibit 4.)
The Sheinfelds applied for a permit to subdivide their lot and to install a driveway on proposed Lot #2 crossing a stream that runs through both proposed lots. (ROR, Item 5.) Jay Sheinfeld clarified at a January 14, 1998 meeting of the commission that he intended to split a five acre building lot from the fifteen-plus acre parcel he owns. (ROR, Item 8.) At the commission's January 28, 1998 meeting, the commission discussed a letter submitted to it by the Sheinfelds' engineer, Brian E. Neff. (ROR, Items 9, 10.) In his letter, Neff described the storm water runoff that would result from the installation of a driveway and indicated what type of soils exist on the Sheinfeld site. (ROR, Item 9.) The commission decided at that meeting that CT Page 1647 it should conduct a site inspection. (ROR, Item 10.)
Three members of the commission visited the site and "noted what appears to be significant impacts to the property as a result of development on what will be Lot #1 if this subdivision is approved." (ROR, Item 11.) The commission members noted that there appeared to be a driveway between the septic system and wetlands that was not on plans for Lot #1, and that there appeared to be a series of vernal pools and wetlands between the two house sites on Lots #1 and #2. (ROR, Item 11.) One member thought that other commission members should visit the site to assess the impact of building a new house on proposed Lot #2 in addition to the house already standing on Lot #1 of the Sheinfeld property. (ROR, Item 11.)
On February 20, 1998, five members of the commission visited the Sheinfeld property. (ROR, Items 12, 13.) The vice-chair of the commission discovered on that visit the presence of the headwater of a stream on the Sheinfelds' property. (ROR, Items 12, 13.) During the visit, the vice-chair suggested planting certain vegetation to attract wildlife and promote conservation. (ROR, Item 12.) The members agreed to request of the Sheinfelds the services of a hydrologist's to assess the impact of the development of Lot #2 would have on surrounding wetlands. (ROR, Item 13.) The commission members also requested information on the configuration of the site's watershed. (ROR, Item 13.)
At the March 11, 1998 meeting of the commission, Jay Sheinfeld submitted a site plan indicating which portions of his land would be free from tree cutting. (ROR, Items 14, 15.) One member expressed concern about the neighboring wetlands. (ROR, Item 14.) Engineer Neff was in attendance and he indicated that his hydrology report would assess the directions of runoff. (ROR, Item 14.)
On March 25, 1998, the commission approved the Sheinfelds' permit for subdivision and wetlands crossing, subject to a conservation easement that would prevent tree cutting beyond a designated tree line to be approved by the chairperson. (ROR, Items 17, 18.) Engineer Neff presented his hydrology report at the meeting (ROR, Item 20), and Jay Sheinfeld presented a letter from Kenneth Stevens, a soil scientist, describing the Sheinfelds' construction project and its impacts. (ROR, Item 21.)
 JURISDICTION
CT Page 1648 A. Aggrievement
"Pleading and proof that the plaintiffs are aggrieved within the meaning of the statute is a prerequisite to the trial court's jurisdiction over the subject matter of the appeal. . . . The burden of proving that they [are] aggrieved [is] on [the] plaintiffs." (Internal quotation marks omitted.) Munhall v.Inland Wetlands Commission, 221 Conn. 46, 50, 602 A.2d 566
(1992).
General Statutes § 22a-43 (a) provides that "any person owning or occupying land which abuts any portion of land or is within a radius of ninety feet of the wetland or watercourse involved in any regulation, order, decision or action made pursuant to [§§ 22a-36 to 22a-45, inclusive] may, within the time specified in subsection (b) of section 8-8 from the publication of such regulation, order, decision or action, appeal to the superior court for the judicial district where the land affected is located. . . ." The Mellos have pleaded and proved that they are statutorily aggrieved as abutters of the subject property. (Amended Appeal, ¶¶ 1, 21; Plaintiffs' Exhibits 1-3). The plaintiffs also proved that Rea is aggrieved. (Transcript, pp. 10-12; Plaintiffs' Exhibits 5, 6.) Jane Hartley and Ralph Schlosstein were also plaintiffs at the outset, but during arguments on the appeal, counsel for the plaintiffs conceded that aggrievement was not proved for Hartley and Schlosstein, although these parties were not formally withdrawn. (Transcript, pp. 13 14.) Plaintiffs' counsel stated that "the plaintiffs that we are proceeding with today are Elizabeth Rea, Cheryl Mello and Alan Mello." (Transcript, p. 14.)
 B. Timeliness and Service of Process
General Statutes § 22a-43 (a) indicates that an inland wetlands and watercourses appeal must be commenced within the time limitations specified by General Statutes § 8-8 (b). Section 8-8 (b), which is a zoning statute, provides that an appeal must be commenced within fifteen days of the publication of notice of the commission's decision.
In this case, the commission first published notice of its decision on April 8, 1998. (ROR, Items 22b, 31a, 31b.) The commission erroneously indicated in the notice that the commission approved the Sheinfelds' application at its March 11, CT Page 1649 1998 meeting. (ROR, Items 22b, 31a, 31b.) The commission published a corrected legal notice on April 19, 1998 indicating the proper decision date, March 25, 1998. (ROR, Item 32.)
The plaintiffs commenced their appeal by service of process to the commission, the town clerk, the chair of the commission, the Sheinfelds, and the commissioner of the department of environmental protection on April 23, 1998. (Sheriff's Return.) The plaintiffs therefore commenced their appeal within fifteen days after the publication of the first notice on April 23, 1998. (Sheriff's Return.) Regardless of which notice was valid, the plaintiffs timely filed their appeal.
 SCOPE/STANDARD OF JUDICIAL REVIEW
"[T]he burden of showing that the agency has acted improperly rests upon the one who asserts it." (Internal quotation marks omitted.) Connecticut Resource Recovery Authority v. Planning Zoning, 225 Conn. 731, 751, 626 A.2d 705 (1993). "A showing by the plaintiff that another decision maker might have reached a different conclusion does not satisfy [the plaintiff's] burden [of proof]. . . . Instead, the plaintiff must establish that substantial evidence does not exist in the record to support the agency's decision. . . . The reviewing court may grant relief from the agency's decision only where the decision is arbitrary, illegal or not reasonably supported by the evidence." (Citations omitted; internal quotation marks omitted.) Keiser v.Conservation Commission, 41 Conn. App. 39, 41, 674 A.2d 439
(1996). "In reviewing an inland wetlands agency decision made pursuant to the act, the reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial." Internal quotation marks omitted.) Samperi v.Inland Wetlands Agency, 226 Conn. 579, 587-88, 628 A.2d 1286
(1993). A reviewing court must search the record for reasons to support the agency's decision. Id., 589.
 DISCUSSION
The plaintiffs initially filed their appeal on May 4, 1998. The plaintiffs filed an amended appeal as of right on June 25, 1998, alleging, inter alia, that the commission acted arbitrarily, illegally and in abuse of its discretion in that (a) it failed to apply the appropriate standard for assessing the CT Page 1650 Sheinfelds' application, (b) it concluded on inadequate evidence that there were no wetlands within one hundred feet of the proposed septic system, (c) it improperly decided not to hold a public hearing, and (d) it failed to publish proper notice. (Amended Appeal, ¶ 24; Plaintiff's Brief, pp. 8-9.)[2]
A. Whether the Commission Adopted and Employed theProper Legal Standards in Reviewing the Application
Connecticut's legislature amended General Statutes §22a-41 effective January 1, 1997. See Public Act 96-157. The plaintiffs allege that "Public Act 96-157 substantively changed each of the criterion which must be considered by the Commission before issuing a permit, including requiring the Commission to consider `impacts of the proposed regulated activity on wetlands or watercourses outside the area for which the activity is proposed and future activities associated with, or reasonably related to, the proposed regulated activity which are made inevitable by the proposed regulated activity and which may have an impact on wetlands and watercourses.'" (Emphasis added.) (Amended Appeal, ¶ 9.) The plaintiffs allege that because the commission failed to incorporate the new language into its regulations by the effective date of the act, the commission "failed to consider or apply the applicable standards imposed by the Wetlands Act as amended by Public Act 96- 157 before acting on the Applicant's request to conduct regulated activities." (Amended Appeal, ¶¶ 10, 24a.)
The Sheinfelds argue that Public Act 96-157 was an act to clarify, rather than modify, the wetlands statute. (Sheinfelds' Brief, p. 7.) Further, the Sheinfelds argue that the commission did consider the effect of the proposed development on wetlands or watercourses in the area. (Sheinfelds' Brief, p. 8.)
The commission argues that "(1) if the existing regulations are not inconsistent with the statutory amendments, the regulations are deemed to continue in force; (2) if the regulations are inconsistent with the statutory amendments, they are deemed to be overruled by implication; (3) it is not necessary for the language of the regulations to duplicate what is in the statutes because the statutes are controlling anyway." (Commission Brief, p. 7.)
Case law supports the commission's position. "An administrative regulation is presumed valid unless it is shown to CT Page 1651 be inconsistent with or beyond the authorizing statute." Slimp v.Dept. of Liquor Control, 239 Conn. 599, 607 n. 18, 687 A.2d 123
(1996). "An amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act." (Internal quotation marks omitted.) Prudential Property Casualty Ins. Co. v. Bannon,233 Conn. 243, 249, 658 A.2d 567 (1995).
General Statutes § 22a-42e provides that "[a]n application filed with an inland wetlands agency which is in conformance with the applicable inland wetlands regulations as of the date of the receipt of such application shall not be required thereafter to comply with any change in inland wetlands regulations. . . . The provisions of this section shall not be construed to apply . . . to any change in regulations necessary
to make such regulations consistent with the provisions of this chapter as of the date of such receipt." (Emphasis added.) According to this language, if the amendment was a mere clarification of the law, the old regulation would apply because the change would not be "necessary" for compliance with the statute. If, on the other hand, Public Act 96-157 did make a substantive change, § 22a-42e dictates that the new regulations, those consistent with the statute, would apply, rather than the old.
The legislative history of Public Act 96-157 sheds some light on its intended purpose. The intent, according to Senator Cook, was "to bring more definition to the various activities of a commission, regarding impact on wetlands by a proposed activity." 39 S. Proc., Pt. 9, 1996 Sess., p. 2953. Representative Stratton's remarks before the House further clarified the purpose of the bill: "What [the bill] then seeks to do is eliminate some of the inconsistent enforcements that have characterized this almost inevitably the fact that 169 different inland wetlands commissions are interpreting this. It seeks to do that by more concretely defining the factors for decisions making." 39 H.R. Proc., Pt. 14, 1996 Sess., p. 4717. Representative Stratton further stated that the bill "primarily seeks to clarify and clarify what's been meant and what has been the practice. Some of this codifies what has been found by the courts to be the case for instance in the definition of feasible improvement when we're talking about alternatives. Again, it seeks to focus the decisions for the factors for decision making on the functional qualities of wetlands." 39 H.R. Proc., Pt. 14, 1996 Sess., p. 4722.[3]
CT Page 1652
The plaintiffs argue that "it is clear from the record that the Commission applied the existing regulations rather than the appropriate standards employed by the regulations that it adopted to become effective on April 1, 1998". (Plaintiffs' Brief, p. 12.) Although the new regulations were to be effective on April 1, 1998, minutes of the commission's meetings reveal that the members were conscious of the effects the Sheinfelds' development might have on nearby property and wetlands. For example, at its January 14, 1998 meeting, commissioner Shusdock "asked about soils on adjacent property across from the septic field area." (ROR, Item 8.) At its January 28, 1998 meeting, the commission decided that it would "ask member Corrigan to set up a site inspection, which will also be attended by Mrs. Luckey and Ms. Purnell." (ROR, Item 10.)
At its first meeting after the site inspection, held on February 20, 1998, the following minutes were recorded: "Commissioners inspected the proposed stream crossing, proposed house site [and] potential septic area. The potential cut for the driveway was noted as well as the presence of a vernal pool on a neighboring property close to the applicant's parcel. (The vernal pool was not on the applicant's map. ) . . . Commissioners Corrigan [and] Purnell discussed, with the applicant, potential plant species that could be planted to re-vegetate disturbed areas [and] to attract wildlife, in an attempt to promote conservation." (ROR, Item 12.)
At its February 25, 1998 meeting, the commission discussed the impact on surrounding wetlands once again: "Because Upland Review Area (URA) slope formulas are not included in the Commission's regulations, Mr. Sheinfeld will be asked to provide a hydrologist's report of the impact on surrounding wetlands of the proposed lot #2 development." (ROR, Item 13.) Further, at its meeting on the eleventh of March, 1998, commissioner Shusdock "said the Commission also has concerns about neighboring wetlands. Mr. Neff said his hydrology report will deal with three directions of runoff; he said both properties (Sheinfeld and neighbors) have wetlands in the back and pointed out the pond downhill some distance away and noted the undulating, rock-outcropped topography that separates it from the proposed new house site." (ROR, Item 14.)
The commission approved the application on March 25, 1998, at which meeting commissioner Shusdock "said the Commission is concerned with what may filter through as well as what will be CT Page 1653 running down. Mr. Neff said his letter (1/22/98) states there are no wetlands within 100' of the proposed septic sites and his calculations show pre- and post-development runoff, which is split in several directions; there is a good amount of wooded area that will remain as a buffer and filter down to wetlands — the development area is not overly large. . . . Mrs. Shusdock noted that the Commission voiced concerns at the last meeting about septic effluent and fertilizer runoff flowing through the rockledges on the site. Mr. Stevens, describing himself as the closest thing to a hydrogeologist present, said the State Health Code, which has been met in the Sheinfeld plans, is very conservative — all pathogens are considered killed in the required 4' between septic pipes and bedrock. He said the dilution rate and the low system output . . . means there will be no measurable nitrates going into groundwater. . . . The stream crossing plan area was reviewed; no objections were raised. Mr. Stevens noted that his recommendation is that there be a shunt for runoff halfway down the driveway." (ROR, Item 18.)
The record reflects that the commission satisfied both the old regulation, which included only the general instruction that the commission must consider "[a]ll environmental impacts of the proposed action"; (1996 Regulations § 8.4(a) [ROR, Item 33]); and the current regulation, which clarifies that the commission shall consider "[i]mpacts of the proposed regulated activity on wetlands or watercourses outside the area for which the activity is proposed" (1998 Regulations § 8.4(f) [ROR, Item 34]). This court may not invalidate the commission's decision where there is evidence on the record that the commission considered the impacts of the proposed development on neighboring wetlands, thereby satisfying both versions of the regulations and General Statutes § 22a-41.
B. Whether the Commission Failed to Obtain the Minimum InformationNecessary to Grant Permission for the Installation of the ProposedSeptic System
The Washington regulations provide that "the minimum setback/buffer distance for the installation of a septic system shall be 100 feet from any wetlands or watercourse." (1996 Regulations § 2.4(d) [ROR, Item 33].) The plaintiffs allege that the commission granted the Sheinfelds' permit without adequate evidence to conclude that there were no wetlands within one hundred feet of the septic system on the adjoining property. (Amended Appeal, ¶ 24e.) The plaintiffs argue that "the CT Page 1654 Commission approved the plan without receiving any information regarding the location and potential impact to wetlands on the adjoining property." (Plaintiffs' Brief, p. 14.)
The Sheinfelds and the commission argue that the commission was entitled to credit engineer Neff's conclusion that the proposed development would not violate the one hundred foot buffer zone. (Sheinfelds' Brief, p. 9; Commission Brief, p. 11; ROR, Items 9, 18.)
In their reply brief, the plaintiffs argue that the wetlands on the adjoining property were not flagged, and that a certified soil scientist, not a civil engineer, must determine the location of wetlands under Washington regulation 3.1. (Plaintiffs' Reply Brief, p. 7.)
Regulation 3.1 provides that "[i]n all cases, the precise location of regulated areas shall be determined by the actual character of the land, the distribution of wetland soil types and the location of watercourses. Such determinations shall be made by field inspection and/or testing conducted by a certified soil scientist where soil classifications are required or, where watercourse determinations are required, by other qualified individuals."
Here, a soil scientist did analyze the proposed project. Kenneth Stevens, Jr., a registered professional soil scientist, inspected the site on March 24, 1998 to review the site plan and "also to determine the extent of adverse environmental impacts to wetlands that may occur because of property development." (ROR, Item 21.) Stevens stated that "setbacks to wetlands and waterbodies are several times greater than the minimum State requirement of 50 feet. Soil permeability, slopes, drainage area, and depth to bedrock all exceed acceptable standards. There are no reasons to believe that surface or groundwater contamination from this system would occur. . . . The undisturbed forest buffer to the southeasterly wetland is 250 feet." (ROR, Item 21.)
Brian Neff, a civil engineer, also stated in the record that the buffer zones were more than adequate. Neff stated in a letter to the commission: "The property owned by Mr. Mrs. Mello to the east of the Subdivision of Lot No. 2 is a similar wooded, ledgy area with no wetlands or watercourses within 100 feet of the proposed septic system area. The Hollis series soils which are well drained and shallow to ledge are predominant in this CT Page 1655 vicinity." (ROR, Item 9.) At the March 25, 1998 meeting of the commission, Neff mentioned again that his letter "states there are no wetlands within 100' of the proposed septic sites." (ROR, Item 18.)
Based on the conclusions of the soil scientist and civil engineer, and based on the commission's own inspection of the land, the commission could reasonably conclude that there were no wetlands within the required setback. "[T]he reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given." (Internal quotation marks omitted.) Samperi v. InlandWetlands Agency, supra, 226 Conn. 587-88.
C. Whether the Commission Erred By Failing to Holda Public Hearing
Neither the former, nor the current Inland Wetlands and Watercourses Regulations of Washington require public hearings except in special circumstances. (1996 Regulations § 8.1 [ROR, Item 33]; 1998 Regulations § 8.1 [ROR, Item 34].) Where the commission determines that the proposed activity may have a "substantial effect" (1996 Regulations §§ 8.1, 2.36 [ROR, Item 33]) or "significant impact" (1998 Regulations §§ 8.1, 2.38 [ROR, Item 34]) on wetlands or watercourses, the Commission must hold a public hearing. The definitions of the 1998 term "significant impact" and the 1996 term "substantial effect" are virtually identical. (See 1996 Regulations § 2.36 [ROR, Item 33]; 1998 Regulations § 2.38 [ROR, Item 34].) The 1996 regulations therefore are applicable because they were in effect at the time of the decision on the Sheinfeld application, and they are consistent with the revisions to General Statutes §22a-42a (c)(1) that took effect on January 1, 1997. SeePublic Act 96-157; Slimp v. Dept. of Liquor Control, supra,239 Conn. 607 n. 18. ("An administrative regulation is presumed valid unless it is shown to be inconsistent with or beyond the authorizing statute.").
The plaintiffs allege in their appeal that the Sheinfelds' application "proposed `Significant Activities' as defined by the Washington Regulations." (Amended Appeal, ¶ 18.) Although the plaintiffs refer to § 2.36(b) of the Washington regulations (Plaintiffs' Brief, p. 15), they are relying on language of § 2.36(e): "`Significant activity' means any activity that may, in the informed judgment of the Commission, have a substantial CT Page 1656 effect on the area for which an application is filed or on another part of that or any inland wetland and/or watercourse system. This substantial effect includes, but is not limited to, such effects as . . .(e) [a]ctual or potential pollution of an aquifer or watercourse." Section 2.31 defines pollution as "harmful thermal effect or the contamination or rendering unclean or impure of any waters of the State by reason of any waste or other materials discharged or deposited therein by any public or private sewer or otherwise so as to directly or indirectly come in contact with any waters. This includes, but is not limited to, erosion and sedimentation resulting from any filling, land clearing or excavation activity." (1996 Regulations § 2.31 [ROR, Item 33].)
The plaintiffs argue that "[t]he record does not contain substantial evidence supporting the implicit conclusion that the proposed septic system could not cause the discharge of effluent into the wetlands located immediately downgradient of the system or that such a discharge would not cause a substantial impact to the wetlands." (Plaintiffs' Brief, p. 16.)[4]
In their brief, the Sheinfelds emphasize that according to the language of § 2.36, the decision of whether the applicant has proposed a significant activity must be made "in the informed judgment of the Commission." (1996 Regulations 2.36 [ROR, Item 33]; Sheinfelds' Brief, p. 9.) The Sheinfelds further note that "there was no evidence before the Commission that the Sheinfelds' activities would result in runoff of septic effluent into either a wetland or watercourse." (Sheinfelds' Brief, p. 10.)
The commission argues that the Supreme Court of Connecticut has allowed inland wetlands commissions broad discretion. The commission cites to Rockville Fish Game Club. Inc. v. InlandWetlands Commission, 231 Conn. 451, 459, 650 A.2d 545 (1994), where the court stated: "The commission's determination that [the] application for a wetlands permit did not involve a `significant activity' may not be disturbed by a reviewing court if the record of the proceedings before the commission reveals that there was substantial evidence to support its conclusion." Id. (Commission Brief, p. 13.)
The commission first addressed the Sheinfeld application at the meeting held on January 14, 1998, at which time the commission was able to evaluate whether a significant activity was involved based on the following: a proposed site development CT Page 1657 plan prepared by professional engineer Brian Neff and surveyor T. Michael Alex (ROR, Item 2), a letter from certified soil scientist Michael Temple, accompanied by a map detailing the flagging of wetlands on the property (ROR, Items 3, 7), a soil erosion and sediment control plan prepared by Neff (ROR, Item 4), a sanitary sewage disposal feasibility report prepared by Neff (ROR, Item 1), and the Sheinfeld application itself (ROR, Item 5). Neff provided detailed plans on the proposed installation of a driveway, dwelling, and septic system with an understanding that "the primary concern related to the proposed development is the control of migration of silt and sediment from the construction activity into wetlands and the brook located downgrade of the proposed construction areas." (ROR, Item 4.) Pursuant to Temple's advice, the Sheinfelds decided to relocate their proposed driveway so that the impact to the wetlands surrounding the stream would be limited. (ROR, Item 3.) Neff's sewage disposal feasibility report concluded that the lot "is an acceptable site for a single family dwelling and on-site subsurface sewage disposal system. The septic system for any dwelling constructed on this lot must be designed in accordance with State Health Code regulations by a licensed engineer." (ROR, Item 1.)
"Relying on the reports and testimony of those witnesses, the commission reasonably could have concluded that the proposed development would have little or no adverse impact on the surrounding wetlands." Rockville Fish Game Club, Inc. v. InlandWetlands Commission, supra, 231 Conn. 458. "[I]t was the responsibility of the commission to evaluate the credibility of witnesses and to resolve disputed factual issues." Id., 459. As in the zoning case of Manchester Environmental Coalition v.Planning Zoning Commission, 41 Conn. Sup. 184, 564 A.2d 639, the commission properly relied upon the expertise of the individuals whose reports and plans were presented. Id., 188.
The experts reported that they planned and designed the proposed development mindful of wetlands concerns, and concluded that the project was feasible. (ROR, Items 1-4, 7.) Further, the plaintiffs cited no record evidence indicating that there would be any pollution of wetlands as a result of the proposed installation of a septic system. The commission was entitled to rely on the record before it to determine whether the proposed activities would be significant activities within the meaning of the statute. See Rockville Fish Game Club. Inc. v. InlandWetlands Commission, supra, 459. The regulations provide that an CT Page 1658 activity is significant when it "may, in the informed judgment of the Commission, have a substantial effect on the area. . . ." (1996 Regulations § 2.36. [ROR, Item 33].) This commission, in its judgment, determined that the Sheinfelds' proposed activity was not significant, a determination supported by the testimony of experts on the record whom the commission was entitled to credit. This court therefore concludes that the commission properly exercised its discretion in deciding not to hold a public hearing.
D. Whether the Commission's Notice of Decisionwas Defective
The commission first published notice of its decision on the Sheinfelds' application on April 8, 1998, stating that the commission approved the application on March 11, 1998. (ROR, Items 22a, 31a-b.) After discovering its error, the commission published notice a second time on April 19, 1998, properly stating that the commission made its decision on March 25, 1998. (ROR, Items 22b, 32.)
The plaintiffs argue that the notice published in Voices on April 8, 1998 was defective and misleading because it recorded the wrong date for the commission's decision on the Sheinfelds' application for subdivision and wetlands crossing. (Plaintiffs' Brief, pp. 17-19.) The plaintiffs argue that because the commission decided on another Sheinfeld application on the date mentioned in the notice, a member of the public reading the notice could have been misled. (Plaintiffs' Brief, pp. 18-19.)
The Sheinfelds argue that the purposes of the notice requirement have been fulfilled, and that the date of the decision is not a required element in providing notice. (Sheinfelds' Brief, pp. 11-13.) The commission argues that the error in the publication was de minimis, and that the notice satisfied the purposes of the notice requirement. (Commission Brief, pp. 13-14.)
"The post-hearing notice must be adequate to allow a reader of it to form an opinion as to whether the decision referred to presents an appealable issue, which is determined from the notice as a whole, including references to the prior notice of the public hearing, and the notice must also allow a reasonable opportunity to obtain the information required to decide whether to appeal if it refers to other sources." R. Fuller, 9 CT Page 1659 Connecticut Practice Series: Land Use Law and Practice (1993) § 46.5, pp. 748-49. The Supreme Court articulated the purpose of notice requirements in Keeney v. Town of Old Saybrook,237 Conn. 135, 676 A.2d 795 (1996), on remand, 239 Conn. 786,686 A.2d 991 (1997). "The right of appeal, if it is to have any value, must necessarily contemplate that the person who is to exercise the right be given the opportunity of knowing that there is a decision to appeal from and of forming an opinion as to whether that decision presents an appealable issue." (Internal quotation marks omitted.) Id., 155-56. "Until the prospective appellant has either actual or constructive notice that a decision has been reached, the right of appeal is meaningless."Bridgeport Bowl-O-Rama v. Zoning Board of Appeals, 195 Conn. 276,281, 487 A.2d 559 (1985).
The appellate court has held that the publication of the improper date when giving notice of a public hearing is misleading. See Cocivi v. Planning Zoning Commission,20 Conn. App. 705, 708, 570 A.2d 226, cert. denied, 214 Conn. 808,573 A.2d 321 (1990). In that case, however, the commission "took no corrective action but merely ignored the mistake." Id. Our Supreme Court subsequently clarified that a misleading defect in notice must be cured. See Keeney v. Town of Old Saybrook, supra,237 Conn. 156.
In the instant matter the commission cured the defect by publishing a corrected notice. In addition, both notices contained the other essential information. Accordingly, the court finds the notice to be adequate.
 CONCLUSION
For the reasons discussed above, the plaintiff's appeal is dismissed.
By The Court
________________________________ Peter Emmett Wiese, Judge